**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | : | |
| IN RE FANNIE MAE 2008 SECURITIES LITIGATION | : : | Master File No. 08 Civ. 7831 (PAC) ECF Case |
| | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT, APPROVAL OF NOTICE TO THE SETTLEMENT CLASSES,
AND CERTIFICATION OF THE SETTLEMENT CLASSES
FOR SETTLEMENT PURPOSES ONLY**

## TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION .................................................................................................. 1

II. FACTUAL BACKGROUND ................................................................................ 4

    A. Procedural History ....................................................................................... 4

    B. Settlement Negotiations ............................................................................... 7

III. THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE
PROPOSED SETTLEMENT ............................................................................... 7

    A. Applicable Standards .................................................................................... 7

    B. The Proposed Settlement Is the Result of Good Faith, Arm's-Length
Negotiations by Well-Informed and Experienced Counsel ................................. 8

    C. The Proposed Settlement Falls Within the Range of Reasonableness and
Merits Issuance of Notice and a Hearing on Final Approval ............................. 10

IV. THE COURT SHOULD APPROVE THE FORM OF THE NOTICE AND PLAN
FOR PROVIDING NOTICE TO THE SETTLEMENT CLASSES ............................... 13

V. THE PROPOSED SETTLEMENT CLASSES SHOULD BE CERTIFIED FOR
SETTLEMENT PURPOSES UNDER RULES 23(a) AND 23(b)(3) ............................ 14

    A. The Members of the Settlement Classes Are Too Numerous to Be Joined ......... 16

    B. Common Questions of Law and Fact Exist ..................................................... 17

    C. Lead Plaintiffs' Claims Are Typical of Those of the Settlement Classes ............. 19

    D. Lead Plaintiffs and Lead Counsel Will Fairly and Adequately Protect the
Interests of the Settlement Classes .................................................................... 20

        1. Common Stock Lead Plaintiffs and Lead Counsel for the Common
Stock Class Will Fairly and Adequately Protect the Interests of the
Common Stock Class ................................................................................. 20

        2. Preferred Stock Lead Plaintiff and Lead Counsel for the Preferred
Stock Class Will Fairly and Adequately Protect the Interests of the
Preferred Stock Class ................................................................................ 21

    E. The Requirements of Rule 23(b)(3) Are Satisfied ............................................. 22

        1. Common Questions of Law and Fact Predominate .................................. 22

i

2.      A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of this Controversy ........................................ 24

VI.   PROPOSED SCHEDULE OF EVENTS ........................................................................ 25

VII.  CONCLUSION ............................................................................................................. 25

<u>**TABLE OF AUTHORITIES**</u>

<u>**PAGE(S)**</u>

**Cases**

*Amchem Prods., Inc. v. Windsor*,
　521 U.S. 591 (1997)................................................................................................. 23

*Aramburu v. Healthcare Fin. Servs.*,
　No. 02 CV 6535 (ARR), 2005 WL 990995 (E.D.N.Y. Apr. 14, 2005)................................... 14

*Basic, Inc. v. Levinson*,
　485 U.S. 224 (1988)................................................................................................. 24

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*,
　504 F.3d 229 (2d Cir. 2007) ...................................................................................... 19

*Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortgage Corp.*,
　543 F. App'x 72 (2d Cir. 2013) ............................................................................... 2, 10

*Consol. Rail Corp. v. Town of Hyde Park*,
　47 F.3d 473 (2d Cir. 1995) ........................................................................................ 17

*Cross v. 21st Century Holding Co.*,
　No. 00 Civ. 4333 (MBM), 2004 WL 307306 (S.D.N.Y. Feb. 18, 2004)................................ 16

*Dura-Bilt Corp. v. Chase Manhattan Corp.*,
　89 F.R.D. 87 (S.D.N.Y. 1981) ................................................................................... 18

*Halliburton Co. v. Erica P. John Fund, Inc.*,
　134 S. Ct. 2398 (2014)............................................................................................. 24

*In re "Agent Orange" Prod. Liab. Litig.*,
　818 F.2d 145 (2d Cir. 1987) ..................................................................................... 18

*In re Am. Int'l Grp. Inc. Sec. Litig.*,
　689 F.3d 229 (2d Cir. 2012) ..................................................................................... 14

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
　452 Fed. App'x 75 (2d Cir. 2012) .............................................................................. 13

*In re Arakis Energy Corp. Sec. Litig.*,
　No. 95 Civ. 3431 (ARR), 1999 WL 1021819 (E.D.N.Y. Apr. 27, 1999)............................... 23

*In re Currency Conversion Fee Antitrust Litig.*,
　No. 01 MDL 1409, 2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006).......................................... 8

*In re Drexel Burnham Lambert Grp., Inc.*,
   960 F.2d 285 (2d Cir. 1992) ........................................................................................ 20

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................................... 12

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   No. 00 Civ. 6689 (SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ..................... 9

*In re Initial Pub. Offering Sec. Litig.*,
   243 F.R.D. 79 (S.D.N.Y. 2007) ...................................................................................... 8

*In re Interpublic Sec. Litig.*,
   No. 02 Civ. 6527 (DLC), 2003 WL 22509414 (S.D.N.Y. Nov. 6, 2003) ........................ 20

*In re Interpublic Sec. Litig.*,
   No. 02 Civ. 6527 DLC, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ............................ 7

*In re NASDAQ Market-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) ................................................................................. 8, 12

*In re Nortel Networks Sec. Litig.*,
   No. 01-CIV-1855 (RMB), 2006 WL 3802198 (S.D.N.Y. Dec. 26, 2006) ....................... 13

*In re NYSE Specialists Sec. Litig.*,
   260 F.R.D. 55 (S.D.N.Y. 2009) .................................................................................... 18

*In re Oxford Health Plans, Inc. Sec. Litig.*,
   191 F.R.D. 369 (S.D.N.Y. 2000) .................................................................................. 18

*In re PaineWebber Ltd. P'ships Litig.*,
   147 F.3d 132 (2d Cir. 1998) ........................................................................................... 7

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) .......................................................................... 8, 12, 14

*In re Sadia, S.A. Sec. Litig.*,
   269 F.R.D. 298 (S.D.N.Y. 2010) .................................................................................. 18

*In re SCOR Holding (Switzerland) AG Litig.*,
   537 F. Supp. 2d 556 (S.D.N.Y. 2008) ........................................................ 17, 18, 19, 23

*In re Veeco Instruments, Inc. Sec. Litig.*,
   235 F.R.D. 220 (S.D.N.Y. 2006) ........................................................................... 19, 23

*In re Vivendi Universal, S.A., Sec. Litig.*,
   242 F.R.D. 76 (S.D.N.Y. 2007) ........................................................................ 16, 18, 20

*In re WorldCom, Inc. Sec. Litig.*,
  219 F.R.D. 267 (S.D.N.Y. 2003) ................................................................ 19, 20, 22, 24

*In re WorldCom, Inc. Sec. Litig.*,
  No. 02 CIV 3288 (DLC), 2004 WL 2591402 (S.D.N.Y. Nov. 12, 2004) ................................ 13

*Leung v. Home Boy Rest. Inc.*,
  No. 07 Civ. 8779 (RJS) (DFE), 2009 WL 398861 (S.D.N.Y. Feb. 18, 2009) ........................... 9

*Moore v. PaineWebber, Inc.*,
  306 F.3d 1247 (2d Cir. 2002) ................................................................................ 23

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993) ........................................................................... 16, 19

*Toure v. Cent. Parking Sys. of N.Y.*,
  No. 05 Civ. 5237 (WHP), 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007) ............................. 19

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ................................................................................ 17, 18

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) ......................................................................... 7, 8, 13

**Statutes**

15 U.S.C. § 77*l* ................................................................................................ 5

15 U.S.C. § 77o ................................................................................................ 5

15 U.S.C. § 78j(b) ............................................................................................. 5

15 U.S.C. § 78t(a) ............................................................................................. 5

15 U.S.C. § 78u-4 ............................................................................................. 4

15 U.S.C. § 78u-4(a)(4) ....................................................................................... 12

15 U.S.C. § 78u-4(a)(7) ....................................................................................... 13

17 C.F.R. § 240.10b-5 .......................................................................................... 5

Fed. R. Civ. P. 23 ...................................................................................... passim

Common Stock Lead Plaintiffs the Massachusetts Pension Reserves Investment Management Board ("PRIM") and State Boston Retirement Board ("SBRB") and Preferred Stock Lead Plaintiff Tennessee Consolidated Retirement System ("TCRS") (collectively, "Lead Plaintiffs"[1]) on behalf of themselves and all members of the proposed Common Stock Class and Preferred Stock Class (collectively, "Settlement Classes"), have reached a proposed settlement of the above-captioned securities class action for $170,000,000.  Lead Plaintiffs respectfully submit this memorandum in support of their unopposed motion seeking preliminary approval of the Settlement and certification of the Settlement Classes, as well as other related relief (the "Motion").  The Motion requests, *inter alia*: (i) preliminary approval of the Settlement; (ii) approval of the form and manner of providing notice of the Settlement to class members; and (iii) the scheduling of a hearing to consider final approval of the Settlement, approval of the Plan of Allocation, and Lead Counsel's[2] requests for awards of attorneys' fees and expenses.

## I.   INTRODUCTION

As described herein, Lead Plaintiffs have agreed to settle all claims asserted in the Action against Defendant Federal National Mortgage Association ("Fannie Mae" or the "Settling Defendant"), the Federal Housing Finance Agency ("FHFA") (together with Lead Plaintiffs, the "Settling Parties"), and certain related Persons, in return for $170,000,000 (the "Settlement Amount"), which will be deposited into escrow accounts for the benefit of the Settlement Classes.  The Settlement will completely resolve the Action.

---

[1] Capitalized terms not defined herein are defined in the Stipulation and Agreement of Settlement, dated as of October 24, 2014 ("Stipulation"), attached as Exhibit 1 to the Joint Declaration of Glen DeValerio, Thomas A. Dubbs, and Frederic S. Fox in Support of Lead Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement, Approval of Notice to the Settlement Classes, and Certification of the Settlement Classes for Settlement Purposes Only ("Joint Decl."), submitted herewith.

[2] "Lead Counsel" means Lead Counsel for the Common Stock Class, Berman DeValerio and Labaton Sucharow LLP, and Lead Counsel for the Preferred Stock Class, Kaplan Fox & Kilsheimer LLP.

The Settlement Amount will be apportioned between the Common Stock Class and the Preferred Stock Class as follows: $123.76 million or 72.8% of the Settlement Amount to the Common Stock Class and $46.24 million or 27.2% of the Settlement Amount to the Preferred Stock Class.  This apportionment was determined by Lead Plaintiffs for the Common Stock Class and the Preferred Stock Class and is based upon and fully consistent with the overall estimated damages attributable to each class, as determined by a damages expert who Lead Plaintiffs consulted in connection with mediation with Fannie Mae.

The numerous and substantial risks that Lead Plaintiffs faced in this litigation offer strong support for the Settling Parties' agreement to settle this Action.  *See, e.g., Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortgage Corp.*, 543 F. App'x 72, 77 (2d Cir. 2013) ("*Freddie Mac*") (affirming dismissal of claims arising from Fannie Mae's sibling Government Sponsored Enterprise Freddie Mac's subprime mortgage exposure for failure to plead loss causation).  Although Lead Plaintiffs believe that the claims they have asserted are meritorious, and the Settling Defendant believes its defenses are meritorious, the Settling Parties all recognize the uncertainty and risks attendant to any litigation—especially a complex class action such as this—and the difficulties, substantial expense, and length of time necessary to prosecute the litigation through class certification, expert discovery, summary judgment motions, trial, post-trial motions, and appeals.  Based upon their respective consideration of these and other relevant factors, the Settling Parties have settled the Action on the terms and conditions set forth in the Stipulation and its accompanying exhibits.

The Settlement was reached only after extensive investigation, litigation, and arm's-length settlement negotiations.  These negotiations included in-person mediation sessions

facilitated by the Honorable Layn R. Phillips (Ret.), an experienced and highly-respected mediator with the law firm Irell & Manella LLP and former United States District Judge.

During the course of the litigation, Lead Plaintiffs, through Lead Counsel, among other things: (i) conducted a thorough investigation into the claims of the Settlement Classes; (ii) drafted a thorough and detailed Joint Consolidated Amended Class Action Complaint; (iii) successfully opposed Defendants' motions to dismiss their risk management claims; (iv) moved to amend the complaint and drafted the operative Second Amended Consolidated Class Action Complaint (the "Complaint"); (v) successfully opposed Defendants' motions to dismiss the Complaint; (vi) engaged in an extensive and diligent discovery program, including the review of 60 witness examinations taken in a related case, the taking of 18 fact depositions, the defending of three fact depositions, the receipt, review, and/or analysis of more than 75 million pages of documents, as well as the propounding of and responding to document requests, interrogatories, and/or requests for admissions; and (vii) participated in mediation regarding a possible settlement of the Action on two separate occasions over the course of the litigation before reaching an agreement in principle.  Accordingly, at the time the Settlement was reached, Lead Plaintiffs and Lead Counsel had a thorough understanding of the claims asserted and the risks of continued litigation.

Lead Plaintiffs, who are all sophisticated institutional investors of the type favored by Congress when passing the Private Securities Litigation Reform Act of 1995 ("PSLRA"), closely monitored and participated in this litigation from the outset, including participating in the settlement negotiation process and the recommendation that the Settlement be approved. Further, Lead Counsel, who have extensive experience in prosecuting securities class actions, strongly believe that the Settlement is in the best interests of their respective classes.

Lead Plaintiffs respectfully request that this Court enter the proposed Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, and Setting Date for Hearing on Final Approval of Settlement (the "Preliminary Approval Order"). The proposed Preliminary Approval Order will, among other things:

(i)      Preliminarily approve of the Settlement on the terms set forth in the Stipulation;

(ii)    Approve of the form, substance, and requirements of the proposed Notice and Summary Notice of settlement, appended as Exhibits 1 and 2 to the proposed Preliminary Approval Order, and the means and methods for disseminating notice, as comporting with due process and the PSLRA, 15 U.S.C. §§ 78u-4, *et seq.*;

(iii)   Grant preliminary certification, for purposes of settlement, of the Common Stock Class and the Preferred Stock Class, as defined in the Stipulation;

(iv)   Appoint PRIM and SBRB as Class Representatives for the Common Stock Class and Berman DeValerio and Labaton Sucharow as Class Counsel for the Common Stock Class;

(v)    Appoint TCRS as Class Representative for the Preferred Stock Class and Kaplan Fox as Class Counsel for the Preferred Stock Class; and

(vi)   Schedule the Settlement Hearing and set deadlines and procedures for: disseminating the Notice and Proof of Claim and publishing the Summary Notice; requesting exclusion; objecting to the Settlement, the proposed Plan of Allocation, Lead Counsel's requests for attorneys' fees and expenses or Lead Plaintiffs' requests for reimbursement of costs and expenses related to their representation of the Classes; and submitting papers in support of final approval of the Settlement.

## II.    FACTUAL BACKGROUND

### A.    Procedural History

Beginning in September 2008, multiple securities class action complaints were filed against Fannie Mae, its auditor Deloitte & Touche LLP, fifteen underwriters (in connection with four preferred stock offerings and one common stock offering during the Class Period), and certain of its officers and directors. These actions were consolidated before the Court as the Consolidated Securities Action. (ECF No. 94.)

The Court appointed Lead Plaintiffs and Lead Counsel in April 2009 (ECF No. 94), designating PRIM and SBRB as Lead Plaintiffs for the Common Stock Class, and TCRS as Lead Plaintiff for the Preferred Stock Class.  Lead Plaintiffs filed the Joint Consolidated Amended Class Action Complaint in June 2009, asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, on behalf of common and preferred stock holders, as well as Section 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77*l* and 77o, on behalf of preferred stock holders only.  (ECF No. 102.)  In November 2009, the Court granted in full a motion to dismiss directed only against the preferred stock holders' claims under Sections 12(a)(2) and 15 of the Securities Act.  (ECF No. 190.)  As a result of that dismissal, the Former Underwriter Defendants and one former officer, David Hisey, were dismissed from the case.  (ECF No. 190.)  In September 2010, the Court dismissed in part claims arising under Sections 10(b) and 20(a) of the Exchange Act, and SEC Rule 10b-5 promulgated thereunder.  (ECF No. 228.)  At that time, the Court dismissed two former officers (Robert Blakely and Stephen Swad) and Deloitte & Touche LLP.  (ECF No. 228.)  The Court denied the motions to dismiss as to Lead Plaintiffs' allegations concerning Fannie Mae's risk-management disclosures against Fannie Mae, its former CEO Daniel Mudd, and its former Chief Risk Officer Enrico Dallavecchia.

In October 2009, the Court granted the motion to intervene filed by FHFA—Fannie Mae's conservator.  (ECF No. 180.)

The parties participated in a mediation in May 2011 using the services of Judge Phillips. The mediation did not resolve the Action and litigation thus continued.

In July 2011, Lead Plaintiffs moved for class certification.  (ECF Nos. 298, 301.)

In December 2011, the Securities and Exchange Commission ("SEC") filed a civil action against defendants Mudd and Dallavecchia, which is pending before the Court.  At that same time, Fannie Mae entered into a non-prosecution agreement with the SEC—an agreement wherein Fannie Mae agreed to cooperate with the SEC's prosecution and further investigation of its case.  In light of the SEC action, Lead Plaintiffs requested and were granted leave to amend their then-operative complaint (Minute Entry dated Feb. 1, 2012).  In accordance, the deadlines for oppositions to the motions for class certification were adjourned.  (ECF No. 336.)

On March 2, 2012, the operative Complaint was filed (ECF Nos. 349 and 400) against Fannie Mae; FHFA, as conservator for Fannie Mae; and the Non-Settling Individual Defendants. The Complaint alleged that Fannie Mae and the Non-Settling Individual Defendants publicly issued materially false and misleading statements that artificially inflated the price of Fannie Mae's securities, in violation of Sections 10(b) and 20(a) of the Exchange Act, and SEC Rule 10b-5 promulgated thereunder, relating to two separate but related areas:  (i) risk controls relating to Fannie Mae's purchase of certain types of mortgages, including subprime and Alt-A loans (*i.e.*, the claims already upheld by the Court in its September 30, 2010 Opinion & Order (ECF No. 228)) and (ii) disclosures regarding Fannie Mae's exposure to subprime and Alt-A loans.

In August 2012, in response to Defendants' motions to dismiss Lead Plaintiffs' claims concerning Fannie Mae's subprime and Alt-A exposure disclosures, the Court issued an Opinion and Order denying the motions to dismiss these claims.  (ECF No. 423.)  The Court thus allowed Lead Plaintiffs' subprime and Alt-A disclosure claims as well as their already-upheld risk-control claims to proceed against Fannie Mae and the Non-Settling Individual Defendants.

By the time an agreement in principle to settle the Action was reached, Settling

Defendant and third parties had produced more than 75 million pages of documents in discovery.

Lead Plaintiffs had further reviewed transcripts for 60 Fannie Mae witness examinations,

conducted 18 additional fact depositions, and defended three fact depositions.  Lead Plaintiffs

had also propounded and responded to document requests, interrogatories, and/or requests for

admissions.  Fact discovery was scheduled to conclude in September 2014.  (ECF No. 484.)

### B.    Settlement Negotiations

After substantial discovery had been conducted, the parties agreed to participate in a

second mediation, which was conducted by Judge Phillips on May 29, 2014.  After post-

mediation communications between Judge Phillips and the parties, an agreement in principle to

settle the Action was reached, which was memorialized in a term sheet signed on July 15, 2014.

## III.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT

### A.    Applicable Standards

Rule 23(e) requires that judicial approval be obtained for any compromise of claims

brought on a class basis.  Fed. R. Civ. P. 23(e).  The settlement of complex class action litigation

is favored by public policy and strongly encouraged.  *See Wal-Mart Stores, Inc. v. Visa U.S.A.*

*Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor

of settlements, particularly in the class action context.  The compromise of complex litigation is

encouraged by the courts and favored by public policy" (citations and internal quotation marks

omitted)).  Approval of a proposed settlement is within the Court's discretion, to be exercised in

accordance with such public policy.  *See In re Interpublic Sec. Litig.*, No. 02 Civ. 6527 DLC,

2004 WL 2397190, at *7 (S.D.N.Y. Oct. 26, 2004); *see also In re PaineWebber Ltd. P'ships*

*Litig.*, 147 F.3d 132, 138 (2d Cir. 1998).

The Court "must determine whether the terms of the proposed settlement warrant preliminary approval . . . [by] mak[ing] 'a preliminary evaluation' as to whether the settlement is fair, reasonable and adequate." *In re Currency Conversion Fee Antitrust Litig.*, No. 01 MDL 1409, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006) (citation omitted); *see also Wal-Mart Stores*, 396 F.3d at 116; *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).

As one Court in this district has explained:

In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice.  Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted.  Once preliminary approval is bestowed, the second step of the process ensues . . .

*NASDAQ*, 176 F.R.D. at 102 (citations omitted); *see also In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).

In essence, the Court should determine whether the settlement is "at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard." *NASDAQ*, 176 F.R.D. at 102 (citation omitted); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("The Court's function now is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." (citation and internal quotation marks omitted)).

**B.      The Proposed Settlement Is the Result of Good Faith, Arm's-Length Negotiations by Well-Informed and Experienced Counsel**

A presumption of fairness applies to proposed class settlements that are the result of arm's-length negotiations between counsel knowledgeable in complex class litigation.  *See Wal-Mart Stores*, 396 F.3d at 116; *see also Leung v. Home Boy Rest. Inc.*, No. 07 Civ. 8779 (RJS)

(DFE), 2009 WL 398861, at *1 (S.D.N.Y. Feb. 18, 2009) (preliminary approval appropriate where "the proposed settlement appears to be the product of extensive, arms-length negotiations conducted by experienced counsel with input from the parties . . .").

Here, the Settlement is the product of rigorous, arm's-length negotiations. After unsuccessful efforts to settle the Action, including a failed mediation in May 2011, Fannie Mae and Lead Plaintiffs agreed to participate in additional settlement discussions. The Settling Parties procured the services of Judge Phillips, a mediator with extensive and successful experience in the area of securities class action litigation, in order the bridge the differences between them. Following mediation on May 29, 2014, although Fannie Mae and Lead Plaintiffs were unable to reach settlement, Judge Phillips maintained a dialog with them. An agreement in principle to settle the Action was reached soon thereafter; it was memorialized in a term sheet signed on July 15, 2014. "[T]hat the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable." *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689 (SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003).

Moreover, Lead Plaintiffs' decision to enter into the Settlement was based on their thorough understanding of the strengths and weaknesses of the claims in the Action, informed by years of extensive litigation. Lead Plaintiffs reached the Settlement after: (i) conducting an extensive investigation into the events and transactions underlying the claims alleged in the Complaint; (ii) analyzing evidence adduced during their investigation and through discovery, which included reviewing and analyzing publicly available information and data concerning Fannie Mae; (iii) reviewing and evaluating roughly 75 million pages of documents and 60 witness examinations, conducting 18 fact-witness depositions, and defending three fact-witness

depositions; (iv) propounding and responding to document requests, interrogatories and/or requests for admissions; (v) consulting with experts on damages and causation issues, among other things; (vi) researching applicable law with respect to Lead Plaintiffs' claims and Defendants' potential defenses; (vii) responding to Defendants' multiple motions to dismiss; and (viii) participating in two rounds of mediation and intensive settlement negotiations.

Settlement negotiations were also well-informed by the exchange of comprehensive mediation statements and supporting evidence, including information and analysis from consulting experts. The mediation sessions were indispensable in airing the issues and obstacles to resolution and clarifying the strengths and weaknesses of the Settling Parties' claims and defenses.

Thus, the Settling Parties did not achieve a Settlement until they had sufficient familiarity with the factual and legal issues in the case to evaluate its merits and agree on a settlement figure that was both acceptable to the Settling Defendant and fair, reasonable, and adequate to the Settlement Classes.

### C.    The Proposed Settlement Falls Within the Range of Reasonableness and Merits Issuance of Notice and a Hearing on Final Approval

The proposed Settlement is an excellent result given the numerous and substantial risks faced in this litigation. According to analyses prepared by Lead Plaintiffs' consulting damages expert, the potential damages Lead Plaintiffs could have obtained at trial, if liability were proven, are estimated to range from a total of approximately $3.7 billion to $6.9 billion, assuming certain disclosure dates were proven and based on well-established methodologies, assumptions, and modeling. The $170,000,000 Settlement Amount represents approximately 2.5% to 4.6% of these estimated damages. This percentage, in view of the unique and significant risks and uncertainties discussed below, is very favorable. *See*, *e.g.*, *Freddie Mac*, 543 F. App'x at 77

(concluding plaintiff failed to establish relationship between Freddie Mac's subprime mortgage exposure and corrective stock price drop for loss causation purposes).

While Lead Plaintiffs are confident in the merits of the claims, plaintiffs would still have to overcome numerous obstacles in order to recover at trial and after likely appeals.  Among other things, the Settling Parties disagreed about (i) whether Defendants made any material misstatements or omissions; (ii) whether Defendants acted with the required state of mind; (iii) the amount by which Fannie Mae's common stock and preferred stock was allegedly artificially inflated (if at all) during the Class Period, defined as November 8, 2006 through September 5, 2008, inclusive; (iv) the extent to which the various matters that Lead Plaintiffs alleged were false and misleading influenced (if at all) the trading price of Fannie Mae's securities during the Class Period; (v) the extent to which the various matters that Lead Plaintiffs alleged were omitted and/or false and misleading were publicly known to the market prior to the alleged disclosure dates; (vi) the extent to which confounding news contributed (if at all) to the price declines of the alleged disclosure dates; (vii) whether any purchasers/acquirers of Fannie Mae's common stock or preferred stock suffered damages as a result of the alleged misstatements and omissions in Fannie Mae's public statements; and (viii) the extent of such damages (if any).

The Settling Parties strenuously disagree about the ability of Lead Plaintiffs to prove damages, even if liability were established.  Defendants repeatedly argued that Lead Plaintiffs' damages were overstated.  At summary judgment or trial, Defendants would likely argue, *inter alia*, that: (i) damages resulting from certain disclosures from which certain alleged risks materialized were not the result of a statistically significant stock price reaction; and (ii) damages must be offset by certain gains.

In the absence of a settlement, the Settling Parties would present factual and expert testimony on each of these issues.  There was considerable risk that the Court or jury would resolve the inevitable "battle of the experts" against Lead Plaintiffs and the classes that they may represent.

As further indicia of its reasonableness, the Settlement has none of the "obvious deficiencies" that could justify denying preliminary approval.  *NASDAQ*, 176 F.R.D. at 102.  In all respects, the terms embodied in the Stipulation are customary in nature.  Lead Plaintiffs' recovery from the Settlement Fund will be determined according to precisely the same formula as the recoveries of other Members of the Settlement Classes, with the exception of any compensatory payment to the Lead Plaintiffs approved by the Court, as contemplated by the PSLRA, 15 U.S.C. § 78u-4(a)(4).  *See NASDAQ*, 176 F.R.D. at 102 (settlement may be approved preliminarily where it "does not improperly grant preferential treatment to class representatives or segments of the class"); *Prudential*, 163 F.R.D. at 209 (preliminary approval is appropriate where "preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives . . ." (citation omitted)).

Finally, the Settlement was negotiated under the direction and with the direct and substantial involvement of Lead Plaintiffs.  This further strengthens the presumption of fairness.  *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004) (participation of sophisticated institutional investor lead plaintiffs in settlement process supports approval of settlement).

IV.     **THE COURT SHOULD APPROVE THE FORM OF THE NOTICE**
        **AND PLAN FOR PROVIDING NOTICE TO THE SETTLEMENT CLASSES**

Lead Plaintiffs also request that the Court approve the form and content of the Notice and Summary Notice (collectively, the "Notices").  (*See* Exhibits 1 and 2 to the proposed Preliminary Approval Order, submitted herewith and attached as Exhibit A to the Stipulation.)  Consistent with Rules 23(c)(2)(B) and 23(e) (1), the Notices apprise Members of the Settlement Classes of the nature of the Action, the definition of the Settlement Classes to be certified, the Settlement Classes' claims and issues, and the claims that will be released.  The Notices also advise that a Member of the Settlement Classes may enter an appearance through counsel if desired; note that the Court will exclude from the Settlement Classes any Member of the Settlement Classes who timely and validly requests exclusion (and sets forth the procedures and deadline for doing so); and further describes (i) the binding effect of a judgment on Members of the Settlement Classes under Rule 23(c)(3), (ii) how to object to the proposed Settlement, the proposed Plan of Allocation, and/or requested attorneys' fees and expenses, and (iii) how to make a claim.

The Notices also satisfy the PSLRA's separate disclosure requirements by, *inter alia*: stating the amount of the Settlement on both an aggregate and average per share basis;[3] stating the amount of attorneys' fees and maximum amount of expenses (both on an aggregate and average per share basis) that Lead Counsel will seek; and providing the names, addresses, and telephone numbers of representatives of the Claims Administrator and Lead Counsel who will be available to answer questions from Members of the Settlement Classes.  *See* 15 U.S.C. § 78u-4(a)(7).  In addition, the Notices provide a brief statement explaining the reasons why the

---

[3] The Notices are not required to contain a specific estimate of damages per share that Plaintiffs would have recovered had they established liability, as a serial objector has repeatedly argued without success, and therefore do not.  *See, e.g., In re Am. Int'l Grp., Inc. Sec. Litig.*, 452 Fed. App'x 75, 76 (2d Cir. 2012)*; Wal-Mart Stores*, 396 F.3d at 100, 106; *In re Nortel Networks Sec. Litig.*, No. 01-CIV-1855 (RMB), 2006 WL 3802198, at *3, *5 (S.D.N.Y. Dec. 26, 2006)*; In re WorldCom, Inc. Sec. Litig.*, No. 02 CIV 3288 (DLC), 2004 WL 2591402, at *11-12 (S.D.N.Y. Nov. 12, 2004).

Settling Parties are proposing the Settlement.  The Notices also disclose the date, time, and location of the final Settlement Hearing and the deadlines for submitting Proof of Claim forms and any objections to the Settlement, the Plan of Allocation, or Lead Counsel's requested attorney's fees and expenses.  These disclosures are thorough and should be approved.

Lead Plaintiffs also request that the Court approve the appointment of A.B. Data, Ltd. as Claims Administrator.  A.B. Data has extensive relevant experience and is a nationally recognized notice and claims administration firm.  *See* Joint Decl. Ex. 2.  A.B. Data's staff consists of experienced certified public accountants, information technology specialists, and various other professionals with substantial experience in notice and claims administration.

## V.    THE PROPOSED SETTLEMENT CLASSES SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES UNDER RULES 23(a) AND 23(b)(3)

In granting preliminary approval of the Settlement, the Court should also preliminarily certify the Settlement Classes under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.  Certification of settlement classes "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants."  *Prudential*, 163 F.R.D. at 205.  "The law in the Second Circuit favors the liberal construction of Rule 23 … and courts may exercise broad discretion when they determine whether to certify a class."  *Aramburu v. Healthcare Fin. Servs.*, No. 02 CV 6535 (ARR), 2005 WL 990995, at *2 (E.D.N.Y. Apr. 14, 2005).  Indeed, the Second Circuit has acknowledged the propriety of certifying a class solely for purposes of a class action settlement. *See In re Am. Int'l Grp. Inc. Sec. Litig.*, 689 F.3d 229, 238-39, 243 (2d Cir. 2012).

Common Stock Lead Plaintiffs seek preliminary certification of the Common Stock Class, consisting of all Persons who, during the Class Period, either on the secondary market or through an original offering pursuant to a registration statement or prospectus: (a) purchased or

acquired Fannie Mae common stock and call options and/or (b) sold Fannie Mae common stock

put options, and were thereby damaged.  Excluded from the Common Stock Class are

(i) Defendants and Former Defendants; (ii) members of the immediate family of any Non-

Settling Individual Defendant or Former Individual Defendant; (iii) any person who was an

officer or member of the Board of Directors of Fannie Mae during the Class Period; (iv) any

firm, trust, corporation, officer, or other entity in which any Defendant or Former Defendant has

or had a controlling interest; and (v) the legal representatives, agents, affiliates, heirs, successors-

in-interest, or assigns of any such excluded party.  For the avoidance of doubt, "affiliates" are

persons or entities that directly, or indirectly through one or more intermediaries, control, are

controlled by or are under common control with one of the Defendants or Former Defendants,

and include any employee benefit plan organized for the benefit of Fannie Mae's employees.

Former Underwriter Defendants and their affiliates shall be excluded solely with regard to the

securities held solely on behalf of, or for the benefit of, their own account(s) (*i.e.*, accounts in

which they hold a proprietary interest).  Any Investment Vehicle shall not be deemed an

excluded person or entity by definition.  Also excluded from the Common Stock Class is any

Person who submits a valid and timely request for exclusion in accordance with the requirements

set forth in the Court-approved Notice.

Preferred Stock Lead Plaintiff seeks preliminary certification of the Preferred Stock

Class, consisting of all Persons who, during the Class Period, either on the secondary market or

through an original offering pursuant to a registration statement or prospectus purchased or

acquired Fannie Mae preferred stock, and were thereby damaged.  Excluded from the Preferred

Stock Class are (i) Defendants and Former Defendants; (ii) members of the immediate family of

any Non-Settling Individual Defendant or Former Individual Defendant; (iii) any person who

15

was an officer or member of the Board of Directors of Fannie Mae during the Class Period;

(iv) any firm, trust, corporation, officer, or other entity in which any Defendant or Former

Defendant has or had a controlling interest; and (v) the legal representatives, agents, affiliates,

heirs, successors-in-interest, or assigns of any such excluded party.  For the avoidance of doubt,

"affiliates" are persons or entities that directly, or indirectly through one or more intermediaries,

control, are controlled by or are under common control with one of the Defendants or Former

Defendants, and include any employee benefit plan organized for the benefit of Fannie Mae's

employees.  Former Underwriter Defendants and their affiliates shall be excluded solely with

regard to the securities held solely on behalf of, or for the benefit of, their own account(s) (*i.e.*,

accounts in which they hold a proprietary interest).  Any Investment Vehicle shall not be deemed

an excluded person or entity by definition.    Also excluded from the Preferred Stock Class is any

Person who submits a valid and timely request for exclusion in accordance with the requirements

set forth in the Court-approved Notice.

## A.   The Members of the Settlement Classes Are Too Numerous to Be Joined

As required for class certification by Rule 23(a)(1), the members of the proposed

Settlement Classes are so numerous that joinder of all of their members would be

"impracticable."  Impracticable does not mean impossible, and "[p]laintiffs are not obligated to

prove the exact class size to satisfy numerosity."  *Cross v. 21st Century Holding Co.*, No. 00 Civ.

4333 (MBM), 2004 WL 307306, at *1 (S.D.N.Y. Feb. 18, 2004) (citing *Robidoux v. Celani*, 987

F.2d 931, 935 (2d Cir. 1993)).  Lead Plaintiffs may satisfy the numerosity requirement by

"showing that a large number of shares were outstanding and traded during the relevant period."

*In re Vivendi Universal, S.A., Sec. Litig.*, 242 F.R.D. 76, 84 (S.D.N.Y. 2007) (citation and

internal quotation marks omitted).  Indeed, numerosity has been presumed at a level as low as 40

class members.  *See In re SCOR Holding (Switzerland) AG Litig.*, 537 F. Supp. 2d 556, 570

(S.D.N.Y. 2008) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.

1995)).

The Settlement Classes satisfy the numerosity threshold here.  During the Class Period,

more than roughly one billion shares of Fannie Mae common stock were outstanding, and shares

of Fannie Mae common stock were traded on the New York Stock Exchange.  *See* Fannie Mae's

Form 10-Q filed Aug. 8, 2008, attached as Exhibit G to Declaration of Jonathan M. Plasse, filed

in support of Common Stock Lead Plaintiffs' Motion for Class Certification, July 18, 2011,

ECF Nos. 303-7.  During the same period, approximately 547 million shares of Fannie Mae

preferred stock were outstanding, and shares of Fannie Mae preferred stock were traded on the

New York Stock Exchange.  *See* Expert Report of Chad Coffman, CFA, attached as Exhibit D to

Declaration of Frederic S. Fox, filed in support of Preferred Stock Lead Plaintiff's Motion for

Class Certification, July 18, 2011, ECF No. 300.  Based on this information, the Court can

conclude that the Settlement Classes likely include thousands, if not tens of thousands, of

members, and joinder of all of these individuals would be impracticable.  Therefore, Rule

23(a)(1) is satisfied.

### B.   Common Questions of Law and Fact Exist

As Rule 23(a)(2) requires, the claims of the members of the proposed Settlement Classes

involve numerous common questions of law and fact.  To establish commonality, members of

each of the classes must have "suffered the same injury," and "[t]heir claims must depend upon a

common contention."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011) (citation

and internal quotation marks omitted).  Class members' "common contention . . . must be of such

a nature that it is capable of classwide resolution—which means that determination of its truth or

falsity will resolve an issue that is central to the validity of each of the claims in one stroke."  *Id.*

at 2551.  The existence of just a single common legal or factual question is sufficient to satisfy

Rule 23(a)(2).  *Id.* at 2556; *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 166-67 (2d Cir. 1987) (same).[4]

Here, the Complaint alleges a litany of questions of fact and law common to all members of the proposed Settlement Classes including, *inter alia*: (i) whether Defendants' alleged acts and omissions violated the federal securities laws; (ii) whether public filings with the SEC, press releases, conference calls, and other statements disseminated by Defendants during the Class Period misrepresented or omitted material facts about Fannie Mae; (iii) whether Defendants acted knowingly, or with recklessness, in allegedly misrepresenting or omitting those material facts; (iv) whether the market prices of Fannie Mae's common stock and preferred stock were artificially inflated during the Class Period due to the alleged false and misleading statements or omissions; (v) whether, with respect to Lead Plaintiffs' and the Settlement Classes' claims pursuant to Section 20(a) of the Exchange Act, the Defendants named in those claims were controlling persons of Fannie Mae; and (vi) whether Lead Plaintiffs and other Members of the Settlement Classes suffered damages, as well as the appropriate measure thereof.

Courts in this District have routinely found that the above types of common questions satisfy Rule 23(a)(2).[5]  The commonality requirement is thus met.

---

[4] As one court observed, "individual issues will likely arise in this as in all class action cases.  But to allow various secondary issues of plaintiffs' claim to preclude certification of a class would render the rule an impotent tool for private enforcement of the securities laws."  *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y. 1981); *see also In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 75 (S.D.N.Y. 2009) (stating that "predominance does not require a plaintiff to show that there are no individual issues").

[5] *See, e.g., SCOR*, 537 F. Supp. 2d at 571 ("whether the [d]efendants' public statements . . . contained material misrepresentations or omissions in violation of Section 10(b), and whether [d]efendants acted with scienter," are common questions that suffice to support a finding of commonality); *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 309 (S.D.N.Y. 2010); *Vivendi*, 242 F.R.D. at 84.  Where, as here, "the facts as alleged show that Defendants' course of conduct concealed material information from an entire putative class, the commonality requirement is met."  *See In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000); *Sadia*, 269 F.R.D. at 309 (finding that plaintiffs demonstrated commonality by alleging "a common course of conduct" whereby defendants made material misrepresentations and omissions to the public).

C.     **Lead Plaintiffs' Claims Are Typical of Those of the Settlement Classes**

As Rule 23(a)(3) requires, "the claims . . . of the representative parties are typical of the claims . . . of the class." Fed. R. Civ. P. 23(b)(3).   Here, the Common Stock Lead Plaintiffs and the Preferred Stock Lead Plaintiff satisfy Rule 23(a)(3)'s typicality requirement because "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *See SCOR*, 537 F. Supp. 2d at 571 (citing *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 245 (2d Cir. 2007)).   "Typicality [ ] does not require that the situations of the named representatives and the class members be identical." *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 238 (S.D.N.Y. 2006) (alteration in original) (citation and internal quotation marks omitted).   Rather, so long as "the disputed issue of law or fact occup[ies] essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class," *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 280 (S.D.N.Y. 2003) (alteration in original) (citation and internal quotation marks omitted), "the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims," *Robidoux*, 987 F.2d at 937; *see also Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237 (WHP), 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007).

Common Stock Lead Plaintiffs' claims are typical of the claims of absent members of the proposed Common Stock Class because they all arise from "the same set of events."   Likewise, Preferred Stock Lead Plaintiffs' claims are typical of the claims of absent members of the proposed Preferred Stock Class.   Lead Plaintiffs alleged that Defendants made material misstatements and omissions, artificially inflating the value of Fannie Mae common and preferred stock.   Typicality has been established in similar securities fraud cases, and it is

19

established here.  *See, e.g.*, *Vivendi*, 242 F.R.D. at 85; *In re Interpublic Sec. Litig.*, No. 02 Civ. 6527 (DLC), 2003 WL 22509414, at *3 (S.D.N.Y. Nov. 6, 2003).

The typicality requirement is met.

### D.   Lead Plaintiffs and Lead Counsel Will Fairly and Adequately Protect the Interests of the Settlement Classes

Rules 23(a)(4) and 23(g) are satisfied here because, as they require, (i) Lead Plaintiffs' interests are not antagonistic to those of other Members of the Settlement Classes, and (ii) Lead Counsel are qualified, experienced, and more than able to conduct this Action.  *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).

### 1.   Common Stock Lead Plaintiffs and Lead Counsel for the Common Stock Class Will Fairly and Adequately Protect the Interests of the Common Stock Class

Common Stock Lead Plaintiffs purchased Fannie Mae common stock on the open market during the Class Period and allegedly suffered significant losses as a result of the same course of conduct that allegedly injured other members of the Common Stock Class.  Therefore, Common Stock Lead Plaintiffs' interests in demonstrating the Settling Defendant's liability and maximizing possible recovery are aligned with the interests of the absent class members.  *See, e.g., WorldCom*, 219 F.R.D. at 282 (finding that "named plaintiffs' interests are directly aligned with those of the absent class members: they are purchasers of WorldCom equity and debt securities who suffered significant losses as a result of the investments").  Further, there is no evidence that Common Stock Lead Plaintiffs have interests antagonistic to the interests of other members of the Common Stock Class, and they have none.

As for the adequacy of Lead Counsel for the Common Stock Class, a court must consider the following: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the

types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).  A court "may [also] consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).

Here, Court-appointed Lead Counsel for the Common Stock Class are amply qualified and experienced and have conducted the Action vigorously and effectively on behalf of Common Stock Lead Plaintiffs and the Common Stock Class.  Berman DeValerio and Labaton Sucharow LLP are among the leading law firms representing plaintiffs in securities class actions in courts throughout the nation.  And Lead Counsel for the Common Stock Class will continue to fairly and adequately prosecute the claims of the Common Stock Class.  *See* Joint Decl. Exs. 3-4.  Lead Counsel for the Common Stock Class have further demonstrated their adequacy by the substantial work undertaken in prosecuting this Action, including defeating Defendants' motions to dismiss, pursuing extensive discovery, hiring and working with experts in various areas to prove the Common Stock Class's allegations, and successfully reaching a very favorable Settlement.

In view of these facts, Common Stock Lead Plaintiffs should be appointed Common Stock Class Representatives, the adequacy requirement is met, and Lead Counsel for the Common Stock Class should be appointed Common Stock Class Counsel.

> **2.     Preferred Stock Lead Plaintiff and Lead Counsel for the Preferred Stock Class Will Fairly and Adequately Protect the Interests of the <u>Preferred Stock Class</u>**

Preferred Stock Lead Plaintiff purchased Fannie Mae preferred stock during the Class Period and allegedly suffered significant losses as a result of the same course of conduct that allegedly injured other members of the Preferred Stock Class.  Therefore, Preferred Stock Lead Plaintiff's interest in demonstrating the Settling Defendant's liability and maximizing possible

recovery are aligned with the interests of the absent class members.  *See, e.g., WorldCom*, 219

F.R.D. at 282.  Further, there is no evidence that Preferred Stock Lead Plaintiff has interests

antagonistic to the interests of other members of the Preferred Stock Class.

 Court-appointed Lead Counsel for the Preferred Stock Class is amply qualified and

experienced and has conducted the Action vigorously and effectively on behalf of the Preferred

Stock Lead Plaintiff and the Preferred Stock Class.  Kaplan Fox is among the leading law firms

representing plaintiffs in securities class actions in courts throughout the nation.  And Lead

Counsel for the Preferred Stock Class will continue to fairly and adequately prosecute the claims

of the Preferred Stock Class.  *See* Joint Decl. Ex. 5.  Lead Counsel for the Preferred Stock Class

has further demonstrated its adequacy by the substantial work undertaken in prosecuting this

Action, including defeating Defendants' motions to dismiss, pursuing extensive discovery, hiring

and working with experts in various areas to prove the Preferred Stock Class's allegations, and

successfully reaching a very favorable Settlement.

 In view of these facts, Preferred Stock Lead Plaintiff should be appointed Preferred Stock

Class Representative, the adequacy requirement is met, and Lead Counsel for the Preferred Stock

Class should be appointed Preferred Stock Class Counsel.

 **E.** **The Requirements of Rule 23(b)(3) Are Satisfied**

 In addition to the four requirements of Rule 23(a), certifiable classes must also satisfy

one of the three subparts of Rule 23(b).  Lead Plaintiffs here seek class certification under Rule

23(b)(3), which establishes two requirements, commonly referred to as "predominance" and

"superiority," both of which are satisfied here.

 **1.** **Common Questions of Law and Fact Predominate**

 Under Rule 23(b)(3), questions of law or fact common to the members of a class must

"predominate" over any questions affecting individual members.  The Second Circuit has stated

that "[c]lass-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).  This test is "readily met in certain cases alleging . . . securities fraud," including this one.  *See SCOR*, 537 F. Supp. 2d at 572 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).

In securities fraud class actions such as this "in which the fraud is alleged to have been carried out through public communications to a wide variety of market participants, common issues of law and fact will generally predominate over individual issues." *In re Arakis Energy Corp. Sec. Litig.*, No. 95 Civ. 3431 (ARR), 1999 WL 1021819, at *10 (E.D.N.Y. Apr. 27, 1999). Here, the Court has sustained allegations that Defendants made material misstatements and omissions in public statements concerning Fannie Mae's internal controls and risk management, which caused the Settlement Classes to suffer losses.  Opinion & Order (granting in part and denying in part motion to dismiss), Sept. 30, 2010, ECF No. 228.  The Court has also sustained allegations concerning Fannie Mae's subprime and Alt-A exposure.  Opinion & Order (denying Defendants' motion to dismiss Lead Plaintiffs' subprime and Alt-A exposure claims), Aug. 30, 2012, ECF No. 423.  Lead Plaintiffs anticipate, based on discovery, that the corresponding elements for the claims arising from these allegations would be established through generalized proof that applies equally to each member of the Settlement Classes.  *See Veeco Instruments*, 235 F.R.D. at 240.

Moreover, Lead Plaintiffs' Section 10(b) claims invoke the "fraud-on-the-market" doctrine, which establishes a rebuttable presumption of reliance where a plaintiff shows "(1) that the alleged misrepresentations were publicly known, (2) that they were material, (3) that the

stock traded in an efficient market, and (4) that the plaintiff traded the stock between the time the misrepresentations were made and when the truth was revealed." *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2408 (2014) (citing *Basic, Inc. v. Levinson*, 485 U.S. 224, 248 n.27 (1988)).  Here, Fannie Mae common stock and preferred stock were listed and actively traded on the NYSE, a highly efficient and automated market during the Class Period.

### 2. A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of this Controversy

Rule 23(b)(3) further requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy," and provides the following factors for consideration when determining whether a class action is superior:  (a) the interest of class members in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) whether it is desirable to concentrate litigation of claims in this forum; and (d) the manageability of a class action.  These factors favor certification here.

Given the size and geographical dispersion of the proposed Settlement Classes and the likelihood that many purchasers will have sustained comparatively small losses, the circumstances here are precisely those for which a class action is appropriate.  It also is desirable to consolidate the litigation of claims here because common legal and factual issues predominate, and the alternative—the individual adjudication of the claims of Members of the Settlement Classes—would be extremely burdensome and risk inconsistency.  *See WorldCom*, 219 F.R.D. at 304 (noting that individual suits would risk "disparate results, [and] threaten to increase the costs of litigation for all parties exponentially").

## VI.     PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court must set a final

approval hearing date, dates for mailing of the Notice and publication of the Summary Notice,

and deadlines for submitting claims or for objecting to the Settlement.  Lead Plaintiffs

respectfully propose the following schedule for the settlement approval process:

| Event | Proposed Due Date |
|---|---|
| Mailing of Notice and Proof of Claim to all Members of the Settlement Classes who can be identified through reasonable effort | Ten (10) business days after entry of the Preliminary Approval Order (the "Notice Date") |
| Publication of Summary Notice | Within fourteen (14) calendar days after the Notice Date |
| Deadline for filing motions in support of final approval of the Settlement, approval of the Plan of Allocation, and Lead Counsel's application(s) for award(s) of attorneys' fees and litigation expenses | Forty-three (43) calendar days after the Notice Date |
| Deadline for submission of requests for exclusion | Sixty (60) calendar days after the Notice Date |
| Deadline for submission of objections | Sixty (60) calendar days after the Notice Date |
| Deadline for filing reply papers | Fourteen (14) calendar days prior to the Settlement Hearing |
| Date of Settlement Hearing | On or after January 26, 2015, subject to the Court's availability |
| Deadline for submission of Proofs of Claim | One hundred twenty (120) calendar days after the Notice Date |

## VII.     CONCLUSION

For all of the foregoing reasons, Lead Plaintiffs respectfully request that this Court:

(a) preliminarily approve the Settlement, including approving the form and substance of the

proposed forms of notice and directing that notice be given to the members of the Settlement

Classes; (b) preliminarily certify the Common Stock Class and the Preferred Stock Class for

settlement purposes; (c) appoint Common Stock Lead Plaintiffs and Lead Counsel for the

Common Stock Class as Common Stock Class Representatives and Common Stock Class

Counsel, respectively; (d) appoint Preferred Stock Lead Plaintiff and Lead Counsel for the

Preferred Stock Class as Preferred Stock Class Representative and Preferred Stock Class

Counsel, respectively; (e) schedule the Settlement Hearing; and (f) grant such further relief as the

Court deems just and proper.

Dated: October 24, 2014

Respectfully submitted,


Glen DeValerio
**BERMAN**
**DeVALERIO**
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300
Facsimile: (617) 542-1194

*Counsel for Massachusetts*
*Pension Reserves Investment*
*Management Board and Lead*
*Counsel for the Common*
*Stock Class*

Thomas A. Dubbs
**LABATON**
**SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 883-7044

*Counsel for State-Boston*
*Retirement Board and Lead*
*Counsel for the Common*
*Stock Class*

Frederic S. Fox
**KAPLAN FOX &**
**KILSHEIMER LLP**
850 Third Avenue, 14th Fl.
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

*Counsel for Tennessee*
*Consolidated Retirement*
*System and Lead Counsel for*
*the Preferred Stock Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 24, 2014, I caused the foregoing document to be served electronically on all ECF participants and mailed via first class mail to the following non-ECF participants.

Mark J. Hulkower
Steptoe & Johnson, L.L.P.
1300 Connecticut Avenue, N.W.
Washington, DC 20036

Jeffrey W. Kilduff
O'Melveny & Myers LLP (DC)
1625 Eye Street, NW
Washington, DC 20006

s/ *Thomas A. Dubbs*
Thomas A.  Dubbs