**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | : | |
| IN RE FANNIE MAE 2008 SECURITIES | : | Master File No. 08 Civ. 7831 (PAC) |
| LITIGATION | : | ECF Case |
| | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF CLASS ACTION
<u>SETTLEMENT AND PLAN OF ALLOCATION</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

THE SETTLEMENT NEGOTIATIONS AND TERMS OF SETTLEMENT..............................3

THE NOTICE PROGRAM SATISFIED RULE 23 AND DUE PROCESS..................................5

ARGUMENT ..............................................................................................................................6

I.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ............................6

     A.     The Standard for Evaluating Class Action Settlements...........................................6

     B.     The Settlement Is Procedurally Fair .....................................................................8

     C.     Application of the *Grinnell* Factors Supports Approval of the Settlement ..........10

          1.     The Complexity, Expense and Likely Duration of the Litigation Support Final Approval of the Settlement ..................................................10

          2.     The Reaction of the Settlement Classes to the Settlement Supports Final Approval of the Settlement..................................................................12

          3.     The Stage of the Proceedings and the Discovery Completed Support Final Approval of the Settlement ..................................................13

          4.     The Reasonableness of the Settlement in Relation to the Risk of Establishing Liability Supports Approval of the Settlement ....................15

          5.     The Reasonableness of the Settlement in Relation to the Risk of Establishing Loss Causation and Damages, in Light of *Freddie Mac* and Other Considerations, Supports Final Approval of the Settlement ...............................................................................................17

          6.     The Risks of Maintaining the Class Action Through Trial Supports Final Approval of the Settlement............................................................19

          7.     The Ability of Defendants to Withstand a Greater Judgment....................19

          8.     The Amount of the Settlement Supports Final Approval ..........................20

II.     CERTIFICATION OF THE SETTLEMENT CLASSES IS APPROPRIATE ................21

III.     THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE ......................................23

CONCLUSION.........................................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Am. Bank Note Holographics Inc.*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001)............................................................... 12, 24

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
   293 F.R.D. 459 (S.D.N.Y. 2013) ..............................................................9

*Anixter v. Home-Stake Prod. Co.*,
   77 F.3d 1215 (10th Cir. 1996) ..............................................................12

*In re Apollo Grp., Inc. Sec. Litig.*,
   No. CV-04-2147-PHX-JAT, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008),
   *rev'd*, 2010 WL 5927988 (9th Cir. 2010) ..............................................................12

*In re Bear Stearns Cos. Inc. Sec. Derivative & ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012)..................................................... 9, 10, 13

*In re Blech Sec. Litig.*,
   187 F.R.D. 97 (S.D.N.Y. 1999) ..............................................................23

*Charron v. Wiener*,
   731 F.3d 241 (2d Cir. 2013), *cert. denied*, *Suarez v. Charron,* 134 S. Ct. 1941
   (2014)..............................................................7

*In re Citigroup Inc. Bond Litig.*,
   296 F.R.D. 147 (S.D.N.Y. 2013) ..............................................................8

*In re Comshare Inc. Sec. Litig.*,
   183 F.3d 542 (6th Cir. 1999) ..............................................................12

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001).............................................................. 8

*In re Delphi Corp. Sec. Derivative & "ERISA" Litig.*,
   248 F.R.D. 483 (E.D. Mich. 2008) ..............................................................9

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006)..............................................................21

*Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)........................................................... *passim*

*In re Digi Int'l, Inc., Sec. Litig.*,
  14 Fed. App'x. 714 (8th Cir. 2001) ...................................................................12

*In re Fannie Mae 2008 Sec. Litig.*,
  742 F. Supp. 2d 382 (S.D.N.Y. 2010)...............................................................18

*In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & ERISA Litig.*,
  4 F. Supp. 3d 94 (D.D.C. 2013)..........................................................................19

*In re Flag Telecom Holdings Ltd. Sec. Litig.*,
  No. 02-CV-3400 (CM) (PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010).......... 18

*Geffon v. Micrion Corp.*,
  249 F.3d 29 (1st Cir. 2001)..................................................................................12

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................... 8, 17

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000).....................................................................................7

*Kuriakose v. Fed. Home Loan Mortg. Corp.*,
  897 F. Supp. 2d 168 (S.D.N.Y. 2012), *aff'd sub nom. Cent. States, Se. & Sw.
  Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 Fed. App'x. 72
  (2d Cir. 2013).........................................................................................................2

*Levitin v. PaineWebber, Inc.*,
  159 F.3d 698 (2d Cir. 1998)................................................................................12

*Lizondro-Garcia v. Kefi LLC*,
  300 F.R.D. 169 (S.D.N.Y. 2014) ...................................................................21, 22

*Longman v. Food Lion, Inc.*,
  197 F.3d 675 (4th Cir. 1999) ..............................................................................12

*In re Longtop Fin. Techs. Ltd. Sec. Litig.*,
  No. 11 CIV. 3658 SAS, 2013 WL 3486990 (S.D.N.Y. July 11, 2013)...................23

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)............................................................ 13, 23

*Marisol A. v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997)................................................................................21

*McCabe v. Ernst & Young, LLP*,
  494 F.3d 418 (3d Cir. 2007)................................................................................12

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
  No. 02 MDL 1484 (JFK), 2007 WL 4526593 (S.D.N.Y. Dec. 20, 2007) ............................... 8

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
  246 F.R.D. 156 (S.D.N.Y. 2007) ......................................................................... 7

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972)............................................................................. 20

*In re Oracle Corp., Sec. Litig.*,
  627 F.3d 376 (9th Cir. 2010) ............................................................................ 12

*In re PaineWebber P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997)......................... 8, 12, 20

*Phillips v. LCI Int'l, Inc.*,
  190 F.3d 609 (4th Cir. 1999) ............................................................................ 12

*Phillips v. Scientific-Atlanta, Inc.*,
  489 Fed. App'x. 339 (11th Cir. 2012) ................................................................. 12

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) ......................................................................... 11

*Shapiro v. JPMorgan Chase & Co.*,
  Nos. 11 Civ. 8831(CM)(MHD), 11 Civ. 7961(CM), 2014 WL 1224666
  (S.D.N.Y. Mar. 24, 2014) .........................................................................8, 10, 12

*In re Silicon Graphics Sec. Litig.*,
  183 F.3d 970 (9th Cir. 1999) ............................................................................ 12

*Silver v. H&R Block, Inc.*,
  105 F.3d 394 (8th Cir. 1997) ............................................................................ 12

*Silverstein v. AllianceBernstein, L.P.*,
  No. 09-CV-5904 (JPO), 2013 WL 7122612 (S.D.N.Y. Dec. 20, 2013)................................23

*In re Smith & Wesson Holding Corp. Sec. Litig.*,
  669 F.3d 68 (1st Cir. 2012)............................................................................. 12

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003)................................................................. 11

*In re Sumitomo Copper Litig.*,
  189 F.R.D. 274 (S.D.N.Y. 1999) ....................................................................... 10

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
  No. 01-CV-11814 (MP), 2004 WL 1087261 (S.D.N.Y. May 14, 2004)................................14

*The City of Providence v. Aeropostale, Inc.*,
   No. 11 Civ. 7132, 2014 WL 1883494 (S.D.N.Y. May 9, 2014)........................................ 7, 10

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05 MDL 01695(CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ..........................9, 10

*In re Visa Check/Mastermoney Antitrust Litig.*,
   297 F. Supp. 2d 503 (E.D.N.Y. 2003), *aff'd sub nom. Wal-Mart Stores, Inc. v.
   VISA U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005)...................................................... 23

*Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005)........................................................................... 5, 23

*In re WorldCom, Inc. ERISA Litig.*,
   No. 02 Civ. 4816 (DLC), 2004 WL 2338151 (S.D.N.Y. Oct. 18, 2004)................................ 7

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005)............................................................... 23, 24

*Wright v. Stern*,
   553 F. Supp. 2d 337 (S.D.N.Y. 2008).....................................................................7

**DOCKETED CASES**

*In re Fannie Mae Sec. Litig.*,
   No. 04-01639 (D.D.C.) ....................................................................................5

*Ohio Pub. Emps. Ret. Sys. v. FHFA*,
   No. 11–cv–01543 (D.D.C. Complaint filed Aug. 26, 2011).............................................20

**RULES**

Fed. R. Civ. P.23 ...........................................................................................14, 23

Fed. R. Civ. P. 23(a) .......................................................................................21, 22

Fed. R. Civ. P. 23(a)(2) ........................................................................................22

Fed. R. Civ. P. 23(a)(4) ........................................................................................22

Fed. R. Civ. P.23(b)(3).......................................................................................22, 23

Fed. R. Civ. P.23(c)(2)(B) ..................................................................................... 5

Fed. R. Civ. P.23(e) .......................................................................................... 7

Fed. R. Civ. P. 23(e)(1).......................................................................................5

**OTHER AUTHORITY**

12 C.F.R. § 1237 ................................................................................................................19

12 C.F.R. § 1237.13(a) .......................................................................................................19

Common Stock Lead Plaintiffs the Massachusetts Pension Reserves Investment Management Board ("PRIM") and State Boston Retirement Board ("SBRB"), and Preferred Stock Lead Plaintiff the Tennessee Consolidated Retirement System ("TCRS") (collectively, "Lead Plaintiffs"),[1] on behalf of themselves and members of the proposed Common Stock Class and Preferred Stock Class, respectively, (collectively, "Settlement Classes"), have reached a proposed settlement of the above-captioned securities class action for $170,000,000.  Lead Plaintiffs respectfully move this Court for orders approving the proposed settlement of this Action, finally certifying the Settlement Classes, and approving the proposed Plan of Allocation that will govern the distribution of the Settlement proceeds.

## PRELIMINARY STATEMENT

Beginning in September 2008, multiple securities class action complaints were filed against Fannie Mae, its auditor Deloitte & Touche LLP, fifteen underwriters (in connection with four preferred stock offerings and one common stock offering during the Class Period), and certain of Fannie Mae's officers and directors.  These actions were consolidated before the Court as the Consolidated Securities Action.  ECF No. 94.  On October 24, 2014, after six years of litigation, the Settling Parties signed a settlement stipulation resolving Lead Plaintiffs' and the Settlement Classes' claims for one hundred seventy million dollars ($170,000,000) which will be apportioned between the Common Stock Class and the Preferred Stock Class as follows: $123.76 million or 72.8% of the Settlement Amount to the Common Stock Class and $46.24 million or 27.2% of the Settlement Amount to the Preferred Stock Class.  *See* Stipulation ¶

---

[1] Unless otherwise noted, capitalized terms not defined herein are defined in the Stipulation and Agreement of Settlement, dated as of October 24, 2014 ("Stipulation").  ECF No. 522-1.

1(uu).[2]  Under the terms of the proposed Settlement, these funds will be allocated to all eligible members of the Settlement Classes allegedly damaged by Defendants' alleged violations of the federal securities laws.

Lead Counsel respectfully submit that the Settlement is an excellent recovery for the Settlement Classes.  As set forth in detail in the accompanying Joint Declaration of Glen DeValerio, Thomas A. Dubbs, and Frederic S. Fox in Support of (A) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and (B) Lead Counsel's Motion for Attorneys' Fees and Payment of Expenses, dated January 16, 2015 (the "Joint Declaration" or "Joint Decl."),[3] when viewed in light of the risks that Lead Plaintiffs might not prevail on Defendants' likely summary judgment motion or at trial—significantly heightened by the Second Circuit's recent affirmance of the dismissal of claims against Fannie Mae's sibling government-sponsored entity Freddie Mac,[4] the Settlement is a very favorable result for the Settlement Classes.  In addition, the Settlement also saves the Settlement Classes the delay posed by continued litigation through summary judgment, trial, and any subsequent appeals.

The Settling Parties reached the Settlement only after aggressively and thoroughly litigating this Action for over six years.  Lead Plaintiffs' efforts are detailed in the Joint Declaration and include, *inter alia*:  (i) an extensive investigation into the Settlement Classes'

---

[2] This apportionment was determined by Lead Plaintiffs for the Common Stock Class and the Preferred Stock Class and is based upon and fully consistent with the overall estimated damages attributable to each class, as determined by a consulting damages expert for Lead Plaintiffs.  *See* Joint Decl. ¶ 130.

[3] The Joint Declaration is an integral part of this submission and the Court is respectfully referred to the Joint Declaration for a detailed description of, *inter alia*, a summary of the allegations and claims, the procedural history of the Action, the investigation and discovery to date, the events that led to the Settlement, and the risks and uncertainties of continued litigation.

[4] *See Kuriakose v. Fed. Home Loan Mortg. Corp.*, 897 F. Supp. 2d 168, 173 (S.D.N.Y. 2012), *aff'd sub nom. Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 Fed. App'x. 72 (2d Cir. 2013) ("*Freddie Mac*"), discussed below.

claims; (ii) drafting a detailed Joint Consolidated Amended Class Action Complaint (the "First Amended Complaint"); (iii) opposing Defendants' motions to dismiss the First Amended Complaint and motion for reconsideration; (iv) moving for class certification; (v) drafting the operative Second Amended Consolidated Class Action Complaint; (vi) an extensive and diligent discovery program, including taking or defending 21 depositions, and the production, review, and/or analysis of more than 75 million pages of documents; (vii) conferring with experts about loss causation, damages, accounting issues, the mortgage industry, and Government Sponsored Enterprises' (such as Fannie Mae) practices and procedures; (viii) a protracted mediation process before U.S. District Judge Layn Phillips (Ret.) preceded by the exchange of a series of detailed mediation statements.  *See* Joint Decl. ¶¶ 11-13, 30-91, 121-28.  Thus, by the time the Settlement was reached, Lead Plaintiffs and Lead Counsel had a detailed and complete understanding of the strengths and weaknesses of the case.

In light of Lead Counsel's informed assessment of the strengths and weaknesses of the claims and defenses asserted and the considerable risks and delays associated with continued litigation and trial, Lead Plaintiffs and Lead Counsel believe that the Settlement is fair, reasonable, and adequate and provides a very favorable result for the Settlement Classes. Accordingly, Lead Plaintiffs respectfully request that the Court grant final approval of the Settlement.

In addition, the Plan of Allocation, which was developed with the assistance of one of Lead Plaintiffs' consulting experts, is a fair and reasonable method for distributing the Net Settlement Fund to Settlement Class Members and should also be approved by the Court.

### THE SETTLEMENT NEGOTIATIONS AND TERMS OF SETTLEMENT

The process of achieving the Settlement has been long and arduous and began with an initial mediation with Judge Phillips on May 3, 2011 in Washington, D.C.  In advance of this

3

mediation, Lead Plaintiffs and Fannie Mae prepared and exchanged detailed mediation statements, and the issues raised were thoroughly vetted during the mediation with Judge Phillips.  Although the mediation was productive in communicating the sides' respective positions and views on the claims and defenses, the participants remained too far apart to reach an agreement.  Joint Decl. ¶¶ 121-22.

Thereafter, the Parties vigorously prosecuted the case, while continuing their dialogue through Judge Phillips.  After numerous informal discussions, a second mediation was scheduled with Judge Phillips on May 29, 2014, while the Parties were engaged in document discovery and depositions.  In advance of the May 2014 mediation, Lead Plaintiffs and Fannie Mae prepared and exchanged detailed mediation statements relating, in large part, to changes in their understanding of the claims since 2011.  Each side also prepared an extensive oral presentation.  Representatives for each of the Lead Plaintiffs attended the mediation, as did representatives of Fannie Mae.  At the mediation, the participants made presentations to Judge Phillips, which supplemented the written mediation statements.  Lead Plaintiffs and Fannie Mae made substantial progress but the mediation did not result in an agreement.  *Id.* ¶¶ 123-25.

Following the 2014 mediation, Lead Plaintiffs and Fannie Mae continued their discussions through Judge Phillips.  Ultimately, both sides agreed to accept a "mediator's recommendation" that the Action settle for $170 million in cash, which has been deposited and is earning interest, in exchange for the release of the Released Class Claims against the Released Defendant Parties and the release of the Released Defendant Claims against the Released Plaintiff Parties.  *See* Stipulation ¶ 3(a) and (b).[5]  The releases allow a complete resolution of all

---

[5] The Former Defendants and the Non-Settling Individual Defendants join in the releases, but they are not formally settling parties. An essentially identical process was followed in the

claims, and potential claims, between Lead Plaintiffs and the Settlement Classes on the one hand, and Fannie Mae, FHFA, the Non-Settling Individual Defendants and the Former Defendants on the other hand.  Joint Decl. ¶¶ 125-28.

## THE NOTICE PROGRAM SATISFIED RULE 23 AND DUE PROCESS

On November 12, 2014, the Court entered its Preliminary Approval Order (ECF No. 527), which directed, among other things, that a hearing be held on March 3, 2015 to determine the fairness, reasonableness, and adequacy of the Settlement (the "Settlement Hearing") and that the Notice and Summary Notice be disseminated.  The Court-appointed Claims Administrator for the Settlement, A.B. Data, Ltd. ("AB Data"), subsequently mailed the Notice by first class mail to all potential Members of the Settlement Classes who could be identified, satisfying the requirements of Rule 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  The Notice also satisfied Rule 23(e)(1), which requires that notice must be provided in a "reasonable manner"—*i.e.*, it must "'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Wal-Mart Stores, Inc. v. VISA U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982) (citations omitted)).

Pursuant to the Preliminary Approval Order, the Notice was mailed beginning on December 4, 2014 and the Summary Notice was published in *The Wall Street Journal* on December 18, 2014 and transmitted over *PR Newswire* on December 17, 2014.  *See* Declaration

---

settlement of *In re Fannie Mae Sec. Litig.*, No. 04-01639 (D.D.C.), in 2013 ("*Fannie I*").  *See* Stipulation of Settlement of Securities Action, ECF No. 1089-2 at 1, n1.

of Adam D. Walter on Behalf of A.B. Data, Ltd. Regarding Mailing of Notice to Potential

Members of the Settlement Classes and Publication of Summary Notice ("Mailing Declaration"

or "Mailing Decl."), Ex. 4 ¶¶ 2-11.[6]  The Notice contains a detailed description of the nature and

procedural history of the Action, as well as the material terms of the Settlement, including, *inter*

*alia*:  (i) the recovery under the Settlement; (ii) the manner in which the Net Settlement Fund

will be allocated among eligible Members of the Settlement Classes; (iii) a description of the

claims that will be released in the Settlement; (iv) the right and mechanism for Members of the

Settlement Classes to exclude themselves; and (v) the right and mechanism for Members of the

Settlement Classes to object to the Settlement, the Plan of Allocation, and/or the requests for

attorneys' fees and expenses.

To date, 567,563 copies of the Notice have been mailed to potential class members.

Although the deadlines to object or seek exclusion are not until February 2, 2015, to date no

objections to the Settlement have been received; there have been no objections to the proposed

Plan of Allocation; and AB Data has received three requests for exclusion from the Settlement

Classes from individual investors representing less than 1,000 shares.

## ARGUMENT

## I.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.   The Standard for Evaluating Class Action Settlements

Rule 23(e) requires review and approval by the Court for a class action settlement to be

effective.  A settlement must be "fair, reasonable, and adequate" in order to be approved.  Fed.

---

[6] All exhibits referenced herein are annexed to the Joint Declaration.  For clarity, citations to exhibits that themselves have attached exhibits will be referenced as "Ex. __-__," wherein the first numerical reference refers to the designation of the entire exhibit itself attached to the Joint Declaration and the second reference refers to the exhibit designation attached to the exhibit itself.

R. Civ. P. 23(e)(2); *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013), *cert. denied*, *Suarez v. Charron,* 134 S. Ct. 1941 (2014).  This evaluation requires the court to consider "both the settlement's terms and the negotiating process leading to settlement."  *Wal-Mart Stores*, 396 F.3d at 116; *Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008) (Chin, J.); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156, 165 (S.D.N.Y. 2007) (Keenan, J.).

While the decision to grant or deny approval of a settlement lies within the broad discretion of the trial court, a general policy favoring settlement exists, especially with respect to class actions.  *Wal-Mart,* 396 F.3d at 116 ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.'") (citation omitted); *see also In re WorldCom, Inc. ERISA Litig.*, No. 02 Civ. 4816 (DLC), 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004) (Cote, J.) (noting that "public policy favors settlement, especially in the case of class actions").  Recognizing that a settlement represents an exercise of judgment by the negotiating parties, the Second Circuit has cautioned that, while a court should not give "rubber stamp approval" to a proposed settlement, it must "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case."  *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974), *abrogated on other grounds by, Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *see also The City of Providence v. Aeropostale, Inc.,* No. 11 Civ. 7132, 2014 WL 1883494, at *3 (S.D.N.Y. May 9, 2014) (McMahon, J.).

In addition to a presumption of fairness that attaches to a settlement reached as a result of arm's-length negotiations, the Second Circuit has identified nine factors that courts should consider in deciding whether to approve a proposed settlement of a class action:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the

> trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463 (citations omitted).  "[N]ot every factor must weigh in favor of settlement, 'rather the court should consider the totality of these factors in light of the particular circumstances.'"  *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004) (Lynch, J.) (citation omitted); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 4526593, at *10 (S.D.N.Y. Dec. 20, 2007) (Keenan, J.).  Here, the Settlement satisfies the criteria for approval articulated by the Second Circuit.

### B.   The Settlement Is Procedurally Fair

A strong initial presumption of fairness attaches to a proposed settlement if it is reached by experienced counsel after arm's-length negotiations.  *See Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8831 (MHD), 2014 WL 1224666, at *7 (S.D.N.Y. Mar. 24, 2014) (McMahon, J.).  A court may find the negotiating process is fair where, as here, "the settlement resulted from 'arm's-length negotiations and [that] plaintiffs' counsel have possessed the experience and ability . . . necessary to effective representation of the class's interests.'"  *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (quoting *Weinberger,* 698 F.2d at 74)*; In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) (Stein, J.), *aff'd*, 117 F.3d 721 (2d Cir. 1997) ("So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement.").

This initial presumption of fairness and adequacy applies here because the Settlement was reached by experienced, fully-informed counsel after arm's-length negotiations facilitated by Judge Phillips, one of the premier mediators in complex, multi-party, high-stakes litigation.  *See In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 155 (S.D.N.Y. 2013) (Stein, J.) (noting the

procedural fairness of settlement mediated by Judge Phillips); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 293 F.R.D. 459, 465 (S.D.N.Y. 2013) (Batts, J.) (noting the procedural fairness of settlement reached through a mediation session before Judge Phillips); *In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (Sweet, J.) (finding procedural fairness of settlement that was mediated by Judge Phillips and describing Judge Phillips as "an experienced and well-regarded mediator of complex securities cases"); *see also In re Delphi Corp. Sec. Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008) (speaking of Judge Phillips, "the Court and the parties have had the added benefit of the insight and considerable talents of a former federal judge who is one of the most prominent and highly skilled mediators of complex actions"); Joint Decl. ¶ 12.

Moreover, the Common Stock Lead Plaintiffs PRIM and SBRB and the Preferred Stock Lead Plaintiff TCRS each supports approval of the Settlement.   Joint Decl. ¶ 17; Exs. 5 - 8.  The recommendation of Lead Plaintiffs, each a sophisticated institutional investor that manages billions in retirement fund assets, also supports the fairness of the Settlement.  Specifically, PRIM manages more than $60 billion in assets, SBRB manages approximately $5.4 billion in assets, and TCRS manages $44 billion in assets.  *See* Exs. 5 ¶ 2, 7 ¶ 1,  8 ¶ 3.  Lead Plaintiffs took an active role in all aspects of this Action, as envisioned by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), including extensive efforts in discovery and direct participation in settlement negotiations. Exs. 5 - 8.  A settlement reached "under the supervision and with the endorsement of a sophisticated institutional investor . . . is 'entitled to an even greater presumption of reasonableness.'"  *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 0165 (CM), 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007) (McMahon, J) (citation omitted).

"'Absent fraud or collusion, the court should be hesitant to substitute its judgment for that of the parties who negotiated the settlement.'" *Id.* (citation omitted).

Lead Counsel, who have extensive experience prosecuting complex securities class actions and are intimately familiar with the facts of this case, believe that the Settlement is not only fair, reasonable, and adequate, but is an excellent result for Lead Plaintiffs and the Settlement Classes. This opinion is entitled to "great weight." *City of Providence,* 2014 WL 1883494, at *5 (citing *PaineWebber*, 171 F.R.D. at 125); *see also Veeco*, 2007 WL 4115809, at *12 (same).

Each of these considerations confirm the reasonableness of the Settlement and that the Settlement is entitled to the presumption of procedural fairness.

### C.   Application of the *Grinnell* Factors Supports Approval of the Settlement

#### 1.   The Complexity, Expense and Likely Duration of the Litigation Support Final Approval of the Settlement

"This factor captures the probable costs, in both time and money, of continued litigation." *Shapiro,* 2014 WL 1224666, at *8. Here, the claims and facts underlying the litigation are highly complex, and the Action likely would have lasted for at least several more years in the absence of settlement. Indeed, securities class actions are by their nature complicated, and district courts in this Circuit have long recognized that "securities class actions are 'notably difficult and notoriously uncertain' to litigate." *In re Bear Stearns,* 909 F. Supp. 2d at 266 (citations omitted); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999) (Pollack, J.).

Lead Plaintiffs' claims raise numerous technical factual issues concerning the home financing industry, including the use of and risks related to subprime and Alt-A loans, as well as complicated legal issues concerning falsity, scienter, and loss causation, among other things. *See generally* Joint Decl. ¶¶ 92-118. With the Second Circuit's affirmance in 2013 of the dismissal

of a similar class action against Freddie Mac, establishing loss causation here became

significantly more complex and expert intensive.  *Freddie Mac*, 543 Fed. App'x. at 72.  There

are significant similarities between the claims in *Freddie Mac* and the instant case.   For instance,

both cases involve practices relating to (and the consequences of) subprime exposure, involve

similar disclosures on some of the same days, and end their class periods on the news of

conservatorship.  Two of the alleged corrective disclosure dates that were dismissed in *Freddie*

*Mac* (August 20, 2008 and September 7, 2008) are also alleged disclosure dates in the present

case.  Significantly, the alleged September disclosure dismissed by the District Court and Second

Circuit concerning conservatorship in *Freddie Mac* was precisely the same press release that

ends the class period in this Action.  Rejection of this disclosure in this Action would have

eliminated the alleged date tied to the greatest losses for the Settlement Classes.  *See* Joint Decl.

¶¶ 93-96.

It would be very costly and time consuming to pursue this litigation all the way through

trial with no guarantee of success.  Even if the Settlement Classes could obtain and enforce a

judgment after trial, the additional delay through post-trial motions and the appellate process

would prevent the Settlement Classes from obtaining any recovery for years.  *See Strougo ex rel.*

*Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) (Sweet, J.)

("[E]ven if a shareholder or class member was willing to assume all the risks of pursuing the

actions through further litigation . . . the passage of time would introduce yet more risks . . . and

would in light of the time value of money, make future recoveries less valuable than this current

recovery.").  Furthermore, even winning at trial does not guarantee a recovery to the Settlement

Classes, because there is always a risk that the verdict could be reversed by the trial court or on

appeal.  *See, e.g., Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing

$81 million jury verdict and dismissing case with prejudice in securities action); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation); *cf. In re Apollo Grp., Inc. Sec. Litig.*, No. CV-04-2147-PHX-JAT, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008), *rev'd*, 2010 WL 5927988 (9th Cir. 2010) (trial court overturned unanimous verdict for plaintiffs, later reinstated by the Ninth Circuit Court of Appeals, and judgment re-entered after denial of *certiorari* by the U.S. Supreme Court).[7]  Thus, this factor weighs strongly in favor of approval of the Settlement.

>**2.    The Reaction of the Settlement Classes to the Settlement Supports Final Approval of the Settlement**

The reaction of the Settlement Classes to the Settlement is a significant factor in assessing its fairness and adequacy, and "'the absence of objectants may itself be taken as evidencing the fairness of a settlement.'"  *PaineWebber*, 171 F.R.D. at 126 (citation omitted); *see also Shapiro*, 2014 WL 1224666, at *9 ("A small number of objections are convincing evidence of strong support by class members."); *In re Am. Bank Note Holographics Inc., Sec. Litig.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) (McMahon, J.) ("[T]he lack of objections may well evidence the fairness of the Settlement.").

---

[7] The myriad of appellate decisions affirming summary judgments and directed verdicts for defendants in securities class action cases also show that surviving a motion to dismiss is not a guarantee of recovery.  *See, e.g., In re Smith & Wesson Holding Corp. Sec. Litig.*, 669 F.3d 68 (1st Cir. 2012); *Phillips v. Scientific-Atlanta Inc.*, 489 Fed. App'x. 339 (11th Cir. 2012); *In re Oracle Corp., Sec. Litig.*, 627 F.3d 376 (9th Cir. 2010); *McCabe v. Ernst & Young, LLP*, 494 F.3d 418 (3d Cir. 2007); *Geffon v. Micrion Corp.*, 249 F.3d 29 (1st Cir. 2001); *In re Digi Int'l, Inc., Sec. Litig.*, 14 Fed. App'x. 714 (8th Cir. 2001); *Longman v. Food Lion, Inc.*, 197 F.3d 675 (4th Cir. 1999); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609 (4th Cir. 1999); *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542 (6th Cir. 1999); *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999); *Levitin v. PaineWebber, Inc.*, 159 F.3d 698 (2d Cir. 1998); *Silver v. H&R Block, Inc.*, 105 F.3d 394 (8th Cir. 1997).

Here, pursuant to the Preliminary Approval Order, a total of 567,563 copies of the Notice have been mailed to potential Members of the Settlement Classes and the Summary Notice was published in *The Wall Street Journal* and issued over the *PR Newswire*. *See* Ex. 4 ¶¶ 10-11. While the deadline set by the Court for Members of the Settlement Classes to exclude themselves from the Settlement Classes or object to the Settlement has not yet passed, to date, only three requests for exclusion have been received (*see id*. ¶ 15) and no objections have been received. If any objections or additional requests for exclusion are received subsequent to the filing of this brief, Lead Plaintiffs will discuss and/or respond in their reply papers, which are required to be filed on or before February 17, 2015.

### 3. The Stage of the Proceedings and the Discovery Completed Support Final Approval of the Settlement

In considering this factor, "'the question is whether the parties had adequate information about their claims, such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement.'" *Bear Stearns,* 909 F. Supp. 2d at 267 (quoting *In re IMAX Sec. Litig*., 283 F.R.D. 178, 190 (S.D.N.Y. 2012) (Sweet, J.). To satisfy this factor, parties need not to have even engaged in formal or extensive discovery. *See Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 363 (S.D.N.Y. 2002) (McMahon, J.).

Here, the Settling Parties resolved the Action after more than six years of vigorous litigation, during which time the Parties spent significant time and resources analyzing and litigating many of the key legal and factual issues in the case. As more fully set forth in the Joint Declaration, Lead Plaintiffs, through Lead Counsel, conducted a comprehensive investigation, which included, among other things, (i) a review of public filings concerning Fannie Mae, as well as publicly available documents from past and pending investigations of Fannie Mae and

Freddie Mac by the U.S. Securities and Exchange Commission ("SEC") and U.S. Congress; (ii) identifying 200 potential witnesses and interviewing 87 former employees; and (iii) consulting with several experts.  Joint Decl. ¶¶ 11, 30-33.

In addition, Lead Plaintiffs conducted extensive formal discovery, including the receipt, review, and/or analysis of 75 million pages of documents from Defendants and various third parties as well as conducting or defending 21 depositions.  *See* Joint Decl. ¶¶ 66-88.  Lead Counsel have worked extensively with Lead Plaintiffs' damages and liability experts, including a mortgage industry expert, accounting experts, and loss causation and damages experts, in order to analyze the strengths and weaknesses of Lead Plaintiffs' claims.  *Id.* ¶¶ 89-91.

Lead Plaintiffs opposed two rounds of motions to dismiss (*see* ECF Nos. 187, 394-96) and also filed their motion for class certification (*see* ECF Nos. 299, 302), arguing that the Action was particularly well-suited for class action treatment and that all the requirements of Federal Rule of Civil Procedure 23 were satisfied.  Accompanying Lead Plaintiffs' class certification motion was an expert report from one of Lead Plaintiffs' experts, Chad W. Coffman, supporting the proposition that the market for Fannie Mae securities was efficient during the Class Period.  (Mr. Coffman also prepared the proposed Plan of Allocation, which is discussed below.)

Accordingly, Lead Plaintiffs and Lead Counsel have developed a comprehensive understanding of the key legal and factual issues in the litigation and, at the time the Settlement was reached, had "a clear view of the strengths and weaknesses of their case[]" and of the range of possible outcomes at trial.  *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01-CV-11814 (MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) (Pollack, J.) (quotation marks and citation omitted).  Accordingly, this factor supports approval of the Settlement.

4.     **The Reasonableness of the Settlement in Relation to the Risk of Establishing Liability Supports Approval of the Settlement**

In assessing the Settlement, the Court should balance the benefits afforded to the Settlement Classes, including the immediacy and certainty of a recovery, against the continuing risks of litigation. *See Grinnell*, 495 F.2d at 463; *Veeco*, 2007 WL 4115809, at *8-9. Although Lead Plaintiffs and Lead Counsel believe that they had a reasonable likelihood of prevailing on the claims at summary judgment and at trial, they also recognize that there were considerable risks involved in pursuing the litigation against Defendants that could have led to a substantially smaller recovery or no recovery at all.

As set forth in detail in the Joint Declaration (¶¶ 102-08), Lead Plaintiffs faced numerous hurdles to establishing liability. In particular, Defendants have raised a number of arguments and defenses (which they would likely raise at summary judgment and trial) involving, *inter alia* whether there were actionable misstatements and omissions and the ability of Lead Plaintiffs to establish that Defendants acted with scienter. *See id.*

For example, with respect to the falsity of statements, Lead Plaintiffs would need to establish that Fannie Mae's relevant risk controls were inadequate. Lead Plaintiffs also would have to show that Fannie Mae's "undisclosed subprime and Alt-A loans" met its own definitions of subprime and Alt-A. Defendants vigorously disputed that they made any alleged misstatements and would have likely offered plausible alternate explanations supported by experts, testimony from current and former Fannie Mae employees, and numerous company documents, to rebut falsity by arguing (i) that Fannie Mae properly disclosed the risk characteristics of its loan portfolio, which allowed investors to determine the percentage of "risky" mortgages with certain FICO scores or LTV ratios and (ii) that the Company's

disclosures with regard to its subprime loans and the risks associated with them did not change significantly even after FHFA imposed a conservatorship on Fannie Mae.  *Id.* ¶¶ 103-05.

For instance, Lead Plaintiffs faced the risk that a jury would find that the alleged misstatements were not false or material and were fully cured when Fannie Mae publicly disclosed additional credit characteristics of its mortgage book of business, without any associated stock drop.  Based on these summaries, which were issued throughout the Class Period with the first relevant one occurring on August 16, 2007, Defendants likely would have argued that Lead Plaintiffs have not identified any corrective disclosures that corrected a prior false disclosure, nor any disclosures of previously undisclosed risks about Fannie Mae's risk management that materialized.  *See* http://www.fanniemae.com/portal/about-us/investor-relations/quarterly-annual-results.html.  If Defendants are able to convince a jury that no new material information relating to the alleged fraud was publicly disclosed after it published its detailed credit characteristics, the jury could have ended the Class Period on August 16, 2007, eliminating all damages.  *Id.* ¶¶ 106-07.

Defendants would also likely argue that Fannie's loan portfolio has, during the economic recovery, performed as they expected.  *Id.* ¶ 104; *see also* November 12, 2014 Preliminary Approval Hearing Transcript, 21:20-23 ("[O]ne of the reasons that [billions of dollars are] flowing into Fannie is because these so-called risky loans that weren't disclosed, they ain't so risky.  They're paying off."), Ex. 3.

Additionally, Defendants would have continued to challenge Lead Plaintiffs' ability to prove that they acted with scienter.  In particular, it is likely that Defendants would argue that the subprime and Alt-A definitions were created by Fannie Mae employees who were experts in their fields and far removed from senior officers of the Company.  Defendants would also likely

argue that emails from Mudd and Dallavecchia regarding the insufficiency of risk controls are not sufficient to prove scienter, by presenting evidence showing that the emails overstated the Individual Defendants' concerns and that they truly believed that the relevant risk controls were adequate.  Joint Decl. ¶ 108.

Although Lead Plaintiffs were optimistic in their ability to ultimately prove the claims asserted, the risks of the case being lost or its value diminished on a pre-trial motion or at trial, when weighed against the immediate benefits of this Settlement, reinforce Lead Plaintiffs' judgment that the Settlement is in the best interest of the Settlement Classes.

> **5.     The Reasonableness of the Settlement in Relation to the Risk of Establishing Loss Causation and Damages, in Light of *Freddie Mac* and Other Considerations, Supports Final Approval of the Settlement**

Even if Lead Plaintiffs successfully established liability, they also faced substantial risk in proving loss causation and damages.  *See* Joint Decl. ¶¶ 93-101.  Once liability is established, damages remain "a complicated and uncertain process, typically involving conflicting expert opinion about the difference between the purchase price and [share]'s true value absent the alleged fraud."  *In re Global Crossing*, 225 F.R.D. at 459 (internal quotation marks and citations omitted).  The elimination of even one of the five disclosures alleged by Lead Plaintiffs to have represented the materialization of concealed risks would have material consequences to the Settlement Classes' recovery.

Defendants would have continued to challenge liability on loss causation grounds, specifically that any potential losses suffered by Lead Plaintiffs and the classes were actually caused by external, independent factors, such as the overall financial crisis, rather than by Defendants' alleged misconduct.  A palpable risk for Lead Plaintiffs is the impact of the *Freddie Mac* decision on the claims in this Action, particularly loss causation.  *Freddie Mac,* 543 Fed. App'x. at 72.  In *Freddie Mac*, the Second Circuit explained, "[w]here, as here, the plaintiff's

stock purchases and losses coincided with a market wide phenomenon—the housing bubble burst—'the prospect that the plaintiff's loss was caused by the fraud decreases,' and therefore the plaintiff must plead facts sufficient to show 'that its loss was caused by the alleged misstatements as opposed to intervening events.'" *Id.* at 74 (internal quotation marks and citation omitted).  With respect to the September 2008 disclosure concerning conservatorship, precisely the same type of announcement that ends the Class Period in this Action, the Circuit ruled, "[t]he fact of the conservatorship was obviously not a corrective disclosure of anything previously concealed." *Id.* at 77.[8]

Here, Lead Plaintiffs would have to similarly face, at summary judgment or trial, Defendants' argument that any decline in the price of Fannie Mae securities was due to events in the housing and financial markets—not to any disclosures regarding Fannie Mae's risk controls or exposure to subprime and Alt-A loans.  Joint Decl. ¶¶ 93-101.

Undoubtedly, the Parties' competing expert testimony on loss causation and damages would reduce the trial of these issues to a risky "battle of the experts" and the "jury's verdict with respect to damages would depend on its reaction to the complex testimony of experts, a reaction that is inherently uncertain and unpredictable." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *28 (S.D.N.Y. Nov. 8, 2010).  The complex issues surrounding loss causation and damages, therefore, support final approval of the Settlement.

---

[8] In addition to the decision in *Freddie Mac*, Defendants may point to the Court's September 30, 2010 Order where the Court expressed skepticism that Lead Plaintiffs would succeed in proving loss causation, noting that a significant portion of plaintiffs' losses were the result of the housing market downturn.  "Although it may be likely that a significant portion, if not all, of Plaintiffs' losses were actually the result of the housing market downturn and not these alleged misstatements, at this stage of pleading . . . [the Court] need only find that Plaintiffs' allegations are plausible." *In re Fannie Mae 2008 Sec. Litig.*, 742 F. Supp. 2d 382, 414 (S.D.N.Y. 2010).

6.      **The Risks of Maintaining the Class Action Through Trial Supports Final Approval of the Settlement**

Had the Settlement not been reached, there is no assurance that class status, once obtained, would be maintained.  Indeed, at the time of Settlement, the Parties were involved in ongoing class discovery in preparation for the briefing of the motion for class certification.  Accordingly, although Lead Plaintiffs do not rely heavily upon this factor in support of final approval of the Settlement, there remains a risk that, absent the Settlement, Lead Plaintiffs may not have been able to maintain class certification through trial.  The Settlement avoids any uncertainty with regard to this issue.

7.      **The Ability of Defendants to Withstand a Greater Judgment**

A litigated judgment here, if liability and damages were established on all claims, could theoretically have amounted to billions of dollars.  The Non-Settling Individual Defendants could not have satisfied such a judgment.  With respect to Fannie Mae, FHFA promulgated a regulation, FHFA Rule 1237, 12 C.F.R. § 1237, that could enable it to prevent Fannie Mae from ever paying an eventual judgment in this litigation.  The relevant portion of the regulation states that FHFA will not pay a securities claim brought against Fannie Mae, "except to the extent the [FHFA] Director determines is in the interest of the conservatorship."  12 C.F.R. § 1237.13(a).  The plaintiffs in *Fannie I* sought an injunction prohibiting enforcement of the regulation and requesting that it be set aside, and motions for summary judgment were filed.  *See Ohio Pub. Emps. Ret. Sys. v. FHFA,* No. 11–cv–01543 (D.D.C. Complaint  filed Aug. 26, 2011) (ECF No. 1); *see also In re Fed. Nat'l Mortg. Ass'n Sec., Derivative  & ERISA Litig.*, 4 F. Supp. 3d 94, 99-100 (D.D.C. 2013).  The impact of the regulation was not determined by the Court in *Fannie I*, given the settlement.  In the present case, FHFA notified the Court that it intended to seek a stay of the Action in light of Rule 1237, but after an unfavorable response by the Court to its letter,

FHFA later advised that it would not seek a stay "at the present time."  If it did seek a stay or summary judgment on this ground, there was a risk that the regulation could be enforced to bar a recovery.  Joint Decl. ¶¶ 113-14.  These risks of non-payment have been eliminated by the Settlement.

<h3 align="center">8.     The Amount of the Settlement Supports Final Approval</h3>

The last two substantive factors courts consider are the range of reasonableness of a settlement in light of (i) the best possible recovery and (ii) litigation risks.  *Grinnell*, 495 F.2d at 463.  In analyzing these last two factors, the issue for the Court is not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the case.  The court "'consider[s] and weigh[s] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable.'"  *Id.* at 462 (citations omitted).  Courts agree that the determination of a "reasonable" settlement "is not susceptible of a mathematical equation yielding a particularized sum[.]"  *PaineWebber*, 171 F.R.D. at 130 (quotation marks and citations omitted).  Instead, "in any case there is a range of reasonableness with respect to a settlement[.]"  *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

The Settlement here provides a recovery well within the range of reasonableness in light of the best possible recovery and all the attendant risks of litigation.

The Settlement would be among the top-35 securities class action settlements in cases not involving a restatement of financials since the passage of the PSLRA in 1995, according to the ISS Securities Class Action Services report through the first half of 2014.  *See* Ex. 1 at 4, 33. The Settlement would also place among the 70 largest post-PSLRA securities class action settlements total.  *See id.* at 4.  In 2013, the median securities class action settlement was $6.5 million and the average was $71.3 million.  *See* Ex. 2 at 1.  In fact, only 8.4% of all securities

20

class actions since 2004 have settled for $100 million or more.  *Id.* at 4.  The Settlement is also

greater than the settlement reached in *Fannie I*, which amounted to $153 million in a case

involving a $9 billion restatement.  *See* ECF No. 1089-2.

This factor therefore strongly supports final approval of the Settlement.

\*   \*   \*

Accordingly, Lead Counsel submits that this Court should find that the *Grinnell* factors,

taken together, weigh in favor of settlement and that the Settlement should be approved.

## II.    CERTIFICATION OF THE SETTLEMENT CLASSES IS APPROPRIATE

"Before certification is proper for any purpose—settlement, litigation, or otherwise—a

court must ensure that the requirements of Rule 23(a) and (b) have been met."  *Denney v.*

*Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006); *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D.

169, 174 (S.D.N.Y. 2014) (same).  In deciding certification, courts must take a liberal rather than

restrictive approach in determining whether plaintiffs satisfy these requirements and may

exercise broad discretion in weighing the propriety of a putative class.  *Marisol A. v. Giuliani*,

126 F.3d 372, 377 (2d Cir. 1997) ("'Rule 23 is given liberal rather than restrictive construction,

and courts are to adopt a standard of flexibility'" in deciding whether to grant certification)

(internal quotation marks and citation omitted).  "Doubts concerning the propriety of class

certification should be resolved in favor of class certification."  *Lizondro-Garcia*, 300 F.R.D. at

174.

Under the terms of the Stipulation, the Settling Parties have agreed to certification of the

Common Stock Class and the Preferred Stock Class, and appointment of Class Representatives

and Class Counsel.  In the Preliminary Approval Order, ECF No. 527, the Court certified the

Settlement Classes and appointed representatives.  Nothing has changed to alter the Court's

certification of the Settlement Classes and the requirements of Federal Rule of Civil Procedure

23(a) and (b)(3) have been satisfied in that:

- The proposed Settlement Classes are so numerous that joinder of all members is impracticable, pursuant to Rule 23(a)(1), as Fannie Mae securities were actively traded on the New York Stock Exchange and more than roughly one billion shares of Fannie Mae common stock and approximately 547 million shares of Fannie Mae preferred stock were outstanding during the Class Period.[9]  Moreover, notice was mailed to more than 567,563 potential Members of the Settlement Classes in connection with the Settlement;

- Lead Plaintiffs allege that Defendants made misrepresentations and omitted material facts from Fannie Mae's public statements, which affected all Members of the Settlement Classes in similar ways.  Pursuant to Rule 23(a)(2), there are a litany of common questions of law and fact shared by class members.  And pursuant to Rule 23(a)(3), the claims of Lead Plaintiffs are typical of the claims of the proposed classes they seek to represent;

- Common Stock Lead Plaintiffs do not have any interests antagonistic to, or in conflict with, the other members of the Common Stock Class, and the Preferred Stock Lead Plaintiff does not have any interests antagonistic to, or in conflict with, the other members of the Preferred Stock Class.  They will each fairly and adequately represent and protect the interests of the other members of their respective class, pursuant to Rule 23(a)(4);

- There are questions of law or fact common to the Settlement Classes, which predominate over any questions solely affecting individual members of the classes, pursuant to Rule 23(b)(3), including: (i) whether the Defendants' actions violated the Securities Exchange Act of 1934, (ii) whether Fannie Mae's public documents and other statements contained false or misleading statements or omitted material facts, (iii) whether the Defendants acted with the requisite intent, and (iv) to what extent the members of the Settlement Classes have sustained damages and the proper measure of such damages; and

- Certifying the classes is superior to all other available methods for the fair and efficient adjudication of this controversy, pursuant to Rule 23(b)(3).  The costs of prosecuting individual actions would far outweigh, in the vast majority of cases, any anticipated recoveries, making them impossible to maintain.  Prosecuting separate actions would create a risk of: (i) inconsistent or varying adjudications with respect to individual members of the classes that would establish incompatible standards of conduct for

---

[9] *See* Fannie Mae's Form 10-Q filed Aug. 8, 2008, attached as Exhibit G to Declaration of Jonathan M. Plasse, filed in support of Common Stock Lead Plaintiffs' Motion for Class Certification, July 18, 2011, (ECF Nos. 303-07); Expert Report of Chad Coffman, CFA, attached as Exhibit D to Declaration of Frederic S. Fox, filed in support of Preferred Stock Lead Plaintiff's Motion for Class Certification, July 18, 2011 (ECF No. 300) and also attached as Exhibit L to Declaration of Jonathan M. Plasse, filed in support of Common Stock Lead Plaintiffs' Motion for Class Certification, July 18, 2011 (ECF No. 303-12).

Defendants; and (ii) adjudications with respect to individual members of the classes that, as a practical matter, would be dispositive of the interests of other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

*See generally* ECF Nos. 298-300, 301-03 [class cert briefing]. *See also*, *e.g., In re Longtop Fin.*

*Techs. Ltd. Sec. Litig.*, No. 11 CIV. 3658 (SAS), 2013 WL 3486990 (S.D.N.Y. July 11, 2013)

(Scheindlin, J.) (performing Rule 23 analysis and certifying securities fraud class action);

*Silverstein v. AllianceBernstein, L.P.*, No. 09-CV-5904 (JPO), 2013 WL 7122612, at *2-6

(S.D.N.Y. Dec. 20, 2013) (Oetken, J.) (performing Rule 23 analysis and certifying New York

Labor Law class action); *In re Blech Sec. Litig.*, 187 F.R.D. 97, 102 (S.D.N.Y. 1999) (Sweet, J.)

(granting class certification and explaining "in an alleged securities fraud case, when a court is in

doubt as to whether or not to certify a class action, the court should err in favor of allowing the

class to go forward"). Accordingly, the Court should finally certify the Common Stock Class

and the Preferred Stock Class; appoint PRIM and SBRB as Class Representatives for the

Common Stock Class, and TCRS as Class Representative for the Preferred Stock Class; and

appoint Labaton Sucharow and Berman DeValerio as Class Counsel for the Common Stock

Class, and Kaplan Fox as Class Counsel for the Preferred Stock Class.

## III.    THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE

The standard for approval of a plan of allocation is the same as the standard for approving

the settlement as a whole: "'namely, it must be fair and adequate.'" *Maley*, 186 F. Supp. 2d at

367 (citation omitted); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y.

2005). "As a general rule, the adequacy of an allocation plan turns on . . . whether the proposed

apportionment is fair and reasonable' under the particular circumstances of the case." *In re Visa*

*Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 518-19 (E.D.N.Y. 2003), *aff'd sub*

*nom. Wal-Mart Stores, Inc. v. VISA U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) (citation omitted). A

plan of allocation "need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel." *In re Am. Bank Note Holographics Inc.*, 127 F. Supp. 2d at 429-30; *see also WorldCom*, 388 F. Supp. 2d at 344 (same).

The Plan of Allocation, which was fully described in the Notice, was prepared with the assistance of one of Lead Plaintiffs' consulting experts, Mr. Coffman, who is highly experienced in the field. It provides for the distribution of the Net Settlement Fund among Authorized Claimants based upon each class member's "Recognized Loss," as calculated by the formulas described in the Notice. The Plan of Allocation provides for separate calculations under Section 10(b) for Fannie Mae common stock, put options, call options, and preferred stock. These formulas are tied to, among other things, the amount of alleged artificial inflation in the share prices, as quantified by Lead Plaintiffs' expert.

AB Data, as the Claims Administrator, will apply the Plan of Allocation to claimants' transactions and determine each Authorized Claimant's *pro rata* share of the amount of the Net Settlement Fund allocated to the Common Stock Class and the amount allocated to the Preferred Stock Class based upon each Authorized Claimant's "Common Stock Recognized Claim" and/or "Preferred Stock Recognized Claim." Calculation of recognized claims will depend upon several factors, including when the Authorized Claimant's shares of Fannie Mae common stock, options, or preferred stock were purchased or otherwise acquired during the Class Period and whether these securities were sold, and if so, when.

Accordingly, the proposed Plan of Allocation is designed to fairly and rationally allocate the proceeds of this Settlement among the Settlement Classes. *See* Joint Decl. ¶¶ 130-34. Notably, no Member of the Settlement Classes has objected to the Plan of Allocation. Accordingly, Lead Counsel respectfully requests that this Court approve the Plan of Allocation.

## CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court grant final approval to the proposed Settlement, finally certify the Settlement Classes, approve the Plan of Allocation of the Net Settlement Fund, and enter the proposed Final Judgment and Order and proposed Order approving the Plan of Allocation of Net Settlement Fund.  (Proposed orders will be submitted with Lead Plaintiffs' reply papers, after the expiration of the deadline for objecting and seeking exclusion has passed.)

Dated:  January 16, 2015                                    Respectfully submitted,


Glen DeValerio
**BERMAN**
**DeVALERIO**
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300
Facsimile: (617) 542-1194

*Counsel for Massachusetts*
*Pension Reserves Investment*
*Management Board and Lead*
*Plaintiff Class Counsel for the*
*Common Stock Class*

Thomas A. Dubbs
**LABATON**
**SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 883-7044

*Counsel for State-Boston*
*Retirement Board and Lead*
*Plaintiff Class Counsel for the*
*Common Stock Class*

Frederic S. Fox
**KAPLAN FOX &**
**KILSHEIMER LLP**
850 Third Avenue, 14th Fl.
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

*Counsel for Tennessee*
*Consolidated Retirement*
*System and Lead Plaintiff*
*Class Counsel for the*
*Preferred Stock Class*

<u>CONCLUSION</u>

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court grant final

approval to the proposed Settlement, finally certify the Settlement Classes, approve the Plan of

Allocation of the Net Settlement Fund, and enter the proposed Final Judgment and Order and

proposed Order approving the Plan of Allocation of Net Settlement Fund.  (Proposed orders will

be submitted with Lead Plaintiffs' reply papers, after the expiration of the deadline for objecting

and seeking exclusion has passed.)

Dated:  January 16, 2015                          Respectfully submitted,

| | | |
|---|---|---|
| Glen DeValerio<br>**BERMAN<br>DeVALERIO**<br>One Liberty Square<br>Boston, MA 02109<br>Telephone: (617) 542-8300<br>Facsimile: (617) 542-1194 | Thomas A. Dubbs<br>**LABATON<br>SUCHAROW LLP**<br>140 Broadway<br>New York, NY 10005<br>Telephone: (212) 907-0700<br>Facsimile: (212) 883-7044 | Frederic S. Fox<br>**KAPLAN FOX &<br>KILSHEIMER LLP**<br>850 Third Avenue, 14th Fl.<br>New York, NY 10022<br>Telephone: (212) 687-1980<br>Facsimile: (212) 687-7714 |
| *Counsel for Massachusetts<br>Pension Reserves Investment<br>Management Board and Lead<br>Plaintiff Class Counsel for the<br>Common Stock Class* | *Counsel for State-Boston<br>Retirement Board and Lead<br>Plaintiff Class Counsel for the<br>Common Stock Class* | *Counsel for Tennessee<br>Consolidated Retirement<br>System and Lead Plaintiff<br>Class Counsel for the<br>Preferred Stock Class* |

**CERTIFICATE OF SERVICE**

I hereby certify that on January 16, 2015, I caused the foregoing Memorandum of Law in

Support of Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of

Allocation to be served electronically on all ECF participants and mailed via first class mail to

the following non-ECF participant.

Jeffrey W. Kilduff
O'Melveny & Myers LLP (DC)
1625 Eye Street, NW
Washington, DC 20006


_/s/ Thomas A. Dubbs_
Thomas A. Dubbs